IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA17-74

 Filed: 21 November 2017

Forsyth County, Nos. 10-CVS-6926; 11-CVS-2998, 7119, 7120, 8170-8174, 8338; 12-
CVS-4851, 4853-4859, 4861-4870, 4873-4876, 4916, 5953-5961, 5963, 6321, 6322,
6652, 7721, 8189; 13-CVS-1645, 4506, 6794, 7129; 14-CVS-4803-4806, 4808, 4809,
5702, 5703, 6311; 15-CVS-0301, 0610, 2471-2532, 3208-3231, 4011-4016, 4655-4657,
5447, 5448, 6744, 7770-7772, 7783, 7784; 16-CVS-0274-0276, 0812-0814, 1290,
1292, 1293, 2670-2688, 3083;

BEROTH OIL COMPANY; SMITH, PAULA AND KENNETH; CLAPP, BARBARA;
CROCKETT, PAMELA MOORE; ESTATE OF WR MOORE; N&G PROPERTIES,
INC.; KOONCE, ELTON V.; REPUBLIC PROPERTIES; KIRBY, EUGENE AND
MARTHA; HARRIS TRIAD HOMES, INC.; HENDRIX, MICHAEL;
ENGELKEMIER, DARREN; HUTAGALUNG, IAN; MAEDL, SYLVIA; STEPT,
STEPHEN; NELSON, JAMES AND PHYLISS; SHUGART ENTERPRISES, LLC;
STUMP, FRANKLIN AND MINNIE; JADE ASSOCIATES, LLC.; CLAYTON, ALMA
C.; PEGRAM, ELAINE SMITH; TRIDENT PROPERTIES, LLC; MCALLISTER,
JUDITH T.; MARSHALL, ANDREW WILLIAM (JOINTLY HELD FAM.
PROPERTY); SEIDELMANN, JOHN H. AND ROSEMARY; POPE, JAMES AND
WANDA; PATEE, RONNIE AND VESTA; MCFADDEN, KENNETH AND PAMELA;
MANN, RONALD CARSON; HIATT, EARL B. AND CRISSMAN; LITTLE, LOREN
A. AND MARGARET; LEWIS, HENRY AND REBECCA; LAWSON, KATHRYN L.;
KINNEY, LOIS K.; FULK, MICHAEL DAVID; EUDY, KRONE EDWARD; DILLON,
CHARLES RAY AND JUDY; BULLINS, BILLIE JOE AND CAROLYN; CW MYERS
TRADING POST, INC.; BRABHAM, VERDELL & MARLA; DIEHL, SCOTT C.;
HIATT, EVERETT AND TERESA; LASLEY, KATHRYN M.; OMEGA SEAFOOD
(GUS AND MARIA HODGES); PEAK, GARY W.; SHROPSHIRE, JOHN AND
BESSIE; SMITH, CHESTER MONROE AND BETTY; THORE, BRENDA SUE,
SDARAH THORE HAMMOND, JAMES THORE; TURPIN, JAMES AND SISTER,
MARJORIE HUTCHENS; HOWELL, MARK AND MELISSA; WATKINS, JAMES
AND DELORES; LEWIS, JERRY B. AND DENNIS; CANIPE, CONSTANCE FLYNT
MULLINEX AND DONALD F. WEISNER; WEISNER, JOHNNY AND HAZEL
(JOINTLY HELD FAM PROPERTY); ALLAN, AND WIFE, JOAN; BOOSE,
THELMA; MYERS, DALE AND MARY; CONTE, JUDITH A.; CLINE, JEFFERY
AND DANA; PFAFFTOWN BAPTIST; PROVIDENCE MORAVIAN; GREER,
HONEY CHRISTINE COLLINS AND JEFFEREY; TERRONEZ, INOCENTE AND
SONIA DOMIQUEZ; FOLK, JOHN AND MARGARET; HOUCK, SCOTT;
BLANCHARD, PAUL; BERRIER, DON M. AND LINDA; BLACKFORD, KEN A.;
WEEKS, SHAWN D.; ALEXANDER, JOHN H. AND WIFE KAREN L.; BAILEY,
ROBERT CHRISTOPHER AND KAREN K.; BARRY, HILDA S.; BUCHANAN,
 BEROTH OIL CO. V. NC DEP’T OF TRANSP.

 Opinion of the Court

JOHN A. JR. AND WIFE CAROL JONES; CALDWELL, MELVIN AND SHERIE;
CAMERON, CARMIE J. AND WAYNE R.; CENTRAL TRIAD CHURCH - LEROY
KELLY; CHURCH, CHRISTOPHER D. AND SHELLEY J.; CONRAD-WHITT,
GLADY B. AND LORETTA C. WHITT ET AL.; CONRAD, HAROLD GRAY;
DARRAH, ELIZABETH S. AND JASON D.; DAVENPORT, LEONARD C. AND
ELSIE H.; DAVIS, SHERRY L.; DECKER, DONNA BALLARD; DILLON, TONY
LEE AND TONI P.; DORN, FRANK R.; FABRIZIO, JEFFREY P.; FRANCIS, LINDA
DENISE; FULP, JARVIS R. AND GLORIA F.; GIRARD, FRANK J. AND WIFE
CAROL; GRIFFIN, THOMAS J. AND NANCY C.; HAMMAKER, DOUGLAS E. AND
MELICENT S.; HAMMOCK, HELEN MANOS AND MARGARET HAMMOCK
HOERNER; HAYWORTH, SIBYL F.; HEMRIC, DANNY W. AND BEVERLY M.;
HENNIS, TAMRA; HOBAN, JANET AND CRAIG; HOLMES, SCOTT P. AND
PAMELA A. HILL-HOLMES; HUBBARD REALTY OF W-S INC.; IRON CITY
INVESTMENTS, LLC - SCOTT SCEARCE; JONES ESTATE ET AL.; KEITH,
MARK A. AND CATHY E.; KISER, JEFFREY AND ELIZABETH;
LEE/MCDOWELL, LATRICE NICOLE; LOWRY, HARRY R. AND SANDRA P;
LUTHERAN HOME W/S PROPERTY; MAIN, JEFFREY C. AND AMBER D.;
MARTIN, TERRY W. AND JO ANN H.; MILLER, CARL JR. AND CURTIS
CARPENTER; MITCHELL, CHRISTOPHER R.; MOORE, HILDA BROWN,
WIDOW; MORAVIAN CHURCH SOUTHERN PROVINCE; NASH, RICHARD AND
MEL - CROWDER, RICK AND SARAH ET AL.; BOARD OF TRUSTEES OF OAK
GROVE MORAVIAN CHURCH; REGIONAL REALTY, INC - KEITH D. NORMAN
ET AL.; SHELTON, JC AND MAGALENE R.; SIMCIC, JOESPH J. AND REBECCA
M.; SMITH, LINDA G.; SNELL, DAVID P.; STACK, WILLIAM C. AND DONYA J.;
STAFFORD, VIOLET G.; STEPHENSON, GREGORY J. AND LE'ANNA H.;
SUMNER, JOHN E., SR. AND ANN H.; SWAIM, DERRICK AND WIFE KRISTINA
C.; TAFFER, LANDON AND EVON; TAFT, LAMAR S. AND CHARLES V.;
THOMASON, PATTIE W. AND VELMA G PARNELL; VANHOY, DALE C.;
VIOLETTE, MICHAEL E. AND DEBORAH W.; WHITE, LEE AND AREATHER;
WRAY, MEGAN P AND ALAN MICHAEL; WESTFALL, ROBERT W. AND KELLI
D.; BEHAN, AUSTIN C. AND MARY JEAN; BENTLEY, CHARLES J., SR. AND
BRENDA G.; BETHANY BAPTIST CHURCH; COOK, SHIRLEY T. AND COOPER,
JENNY C.; WILMOTH-DOUTHIT ET AL.; DASILVA, GEORGE; FLUITT, JOE AND
PAMELA MARTIN; HANNA, HEATHER W. AND MARK J.; HUBBARD REALTY;
KUHL, WILLIAM A. AND BRENDA S.; LB3 LLC - HILO ENTERPRISES, LLC;
LINER, DALE S. AND PEGGY; LUPER, FERRELL M. AND JOYCE; GLASS,
LAVONDA; MDC INVESTMENTS, LLC; SEIVERS, HARVEY W. AND BETTY C.;
SMALLS, SAMPSON H. AND SHARON; SMITH, SAM & CHRIS; SWAISGOOD,
THOMAS D.; THRUSH, GLENN E., JR.; TROTTER, HELEN L.; TUCKER,
MARGARET; VANCE, LATANDRA T.; WESTMORELAND, CB HEIRS ET AL.;

 -2-
 BEROTH OIL CO. V. NC DEP’T OF TRANSP.

 Opinion of the Court

WHITE, DORIS T., WIDOW; HICKS, RONALD; SMITH, LINDA; SNOW, CRAIG;
SEDGE GARDEN POOL; KEARNEY, CLYDE AND HUGH; BEANE, TABITHA;
FLAKE, WILDON C., JR.; ADAMS, WEBB, THOMAS; GORDON, HELEN;
PEARSON, BEVERLY; BIAS, TERESA; BOYLES, DANTE; CLARK, JON;
FLETCHER, JOSEPH; EMBLER, DEBBIE; GURSTEIN, SCOTT; HOBBS,
STEVEN; THORE, BOBBY; CHARLES, DEBORAH T.; FORTNEY, WALTER;
NODINE, DENNIS AND ELIZABETH; MESSICK, BILL (J.G. MESSICK & SON,
INC.); MONROE, ELDER RONALD; WARD, PEGGY; PERKINS, JERRIE;
SHOUSE, CHRISTINE R. KAUTZ AND PAUL KAUTZ; PEEPLES, WADE AND
MARY LOU; CUNNINGHAM, JOHN AND GAYLE; CHAPMAN, LEE AND PEGGY
– CHAPMAN FAMILY TRUST; WILLARD, DANIEL; CREWS, RACHEL; ROGERS,
DARRELL AND AMBER; HEMMINGWAY, REESHEMAH; HOLT, LINDA;
ALDRIDGE, MARTHA; HOOPER, MARY; WESTMORELAND, JACK; BOLIN,
AMBER; BREWER JR., BOBBY; BRIGGS, JOHN; BURCHETTE, GLENN &
TAMMY; HILL, EUGENE - ESH RENTAL; HAWKS, HOWARD; SPEAR, JOYCE &
KIMBERLY; STOLTZ, WILLIAM; STIMPSON, ROBERT; STEWART, ASHLEY;
RODDY, TERRY; NELSON, STEPHEN AND THERESA; MCKINNEY, MATTHEW
AND TANGELA; FLINCHUM, MARLENE; Plaintiffs,

 v.

NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, Defendant.

and

Guilford County, Nos. 14-CVS-10615; 15-CVS-4276-4278, 4799, 6926;

BELL, KENNETH E.; BARLEY, JO ELLEN AND MARY B. WATSON; SUMMERS,
MICHAEL AND BRENDA; GRUNDMAN, ROBERT E. AND LINDA L.; PICKARD,
MARK J. AND LINDA J.; FELTS FAMILY LIMITED PARTNERSHIP; Plaintiffs,

v.

NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, Defendant.

 -3-
 BEROTH OIL CO. V. NC DEP’T OF TRANSP.

 Opinion of the Court

 Appeal by defendant from order entered 3 October 2016 by Judge John O.

Craig III in Forsyth County Superior Court and Guilford County Superior Court.

Heard in the Court of Appeals 17 May 2017.

 Hendrick Bryant Nerhood Sanders & Otis, LLP, by Matthew H. Bryant, T. Paul
 Hendrick, Timothy Nerhood, W. Kirk Sanders, and Kenneth C. Otis III, for
 plaintiffs-appellees.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General James
 M. Stanley, Jr.; Teague Campbell Dennis & Gorham, LLP, by Matthew W.
 Skidmore and Jacob H. Wellman; and Smith, Anderson, Blount, Dorsett,
 Mitchell & Jernigan, LLP, by Steven M. Sartorio and William H. Moss, for the
 North Carolina Department of Transportation, defendant-appellant.

 BERGER, Judge.

 The North Carolina Department of Transportation (“NCDOT”) appeals an

October 3, 2016 order (the “Order”) that addressed three issues in an inverse

condemnation action filed by two hundred and eleven plaintiffs in both Forsyth and

Guilford Counties against NCDOT seeking just compensation for the regulatory

taking effectuated by NCDOT’s recordation of a transportation corridor map

pursuant to N.C. Gen. Stat. § 136-44.50 to .54 (the “Map Act”). In some instances,

the plaintiff’s property rights were taken almost two decades ago. The appealed order

granted nine plaintiffs’ summary judgment motion as directed by our Supreme Court

and this Court, partially granted the remaining plaintiffs’ motion for judgment on the

 -4-
 BEROTH OIL CO. V. NC DEP’T OF TRANSP.

 Opinion of the Court

pleadings, and set forth the rules and procedures by which the trial court would

adjudicate the remaining issues of the individual cases.

 To establish grounds for immediate review of the interlocutory order, NCDOT

asserts two substantial rights that it alleges would not be fully and adequately

protected by appellate review after final judgment. First, NCDOT argues that

decisions involving title and area taken in eminent domain proceedings affect a

substantial right and are appropriate for immediate review. While this is a

substantial right, and may justify interlocutory review, it is a right of one who holds

an interest in property, not a right of the condemnor if that condemnor holds no

interest. NCDOT has not argued that it holds any interest in the properties at issue

in this appeal. Therefore, this ground for interlocutory review must fail.

 Second, NCDOT argues that decisions depriving the State of its right to

sovereign immunity affect a substantial right and require immediate review. Again,

this is generally a substantial right and could certainly justify our interlocutory

review, except that the litigation has progressed well past the point where sovereign

immunity could be asserted, as it is a jurisdictional bar to suit against the State.

Furthermore, sovereign immunity does not bar suit against the State when the State

has exercised its eminent domain power. Therefore, in this instance, sovereign

immunity provides no protection for the State, and NCDOT’s assertion of sovereign

immunity appears to be for no reason but either delay or distraction.

 -5-
 BEROTH OIL CO. V. NC DEP’T OF TRANSP.

 Opinion of the Court

 Because sovereign immunity has generally been held to be a substantial right

allowing interlocutory appeal, NCDOT initially introduces its argument attempting

to establish grounds for appellate review as one of sovereign immunity. Yet, the

substance of its argument quickly shifts to a separation of powers argument in which

NCDOT asserts that the judicial branch is barred from ordering the executive branch

to expend monies from the state treasury absent an appropriation of the legislative

branch. See N.C. Const. art. V, § 7 (“No money shall be drawn from the State treasury

but in consequence of appropriations made by law.”). However, NCDOT cites no

precedent whereby this Constitutional restriction of power creates for it a substantial

right that could permit NCDOT interlocutory review.

 “There is no more effective way to procrastinate the administration of justice

than that of bringing cases to an appellate court piecemeal through the medium of

successive appeals from intermediate orders.” Veazey v. Durham, 231 N.C. 357, 363,

57 S.E.2d 377, 382, reh’g denied, 232 N.C. 744, 59 S.E.2d 429 (1950). When the State

takes private property for a public use, it must pay just compensation. Sovereign

immunity will not relieve it of this restriction on the use of its eminent domain power.

Because both grounds given by NCDOT to justify our interlocutory review fail, we

dismiss.

 Factual & Procedural Background

 -6-
 BEROTH OIL CO. V. NC DEP’T OF TRANSP.

 Opinion of the Court

 The order NCDOT has herein appealed was entered October 3, 2016. In the

order, the trial court followed the instructions of this Court, that reversed a prior

order, and the Supreme Court, that affirmed the opinion of this Court. Kirby v. N.C.

Dep’t of Transp. (Kirby I), 239 N.C. App. 345, 769 S.E.2d 218, appeal dismissed, disc.

review allowed, ___ N.C. ___, 775 S.E.2d 829 (2015), aff'd, Kirby v. N.C. Dep’t of

Transp. (Kirby II), 368 N.C. 847, 786 S.E.2d 919 (2016). Because only procedural

aspects of this case have changed since Kirby II, we adopt that opinion’s recitation of

the pertinent facts:

 In 1987 the General Assembly adopted the Roadway
 Corridor Official Map Act (Map Act). Act of Aug. 7, 1987,
 ch. 747, sec. 19, 1987 N.C. Sess. Laws 1520, 1538–43
 (codified as amended at N.C.G.S. §§ 136-44.50 to -44.54
 (2015)); see also N.C.G.S. §§ 105-277.9 to -277.9A, 160A-
 458.4 (2015). Under the Map Act, once NCDOT files a
 highway corridor map with the county register of deeds,
 the Act imposes certain restrictions upon property located
 within the corridor for an indefinite period of time.
 N.C.G.S. § 136-44.51. After a corridor map is filed, “no
 building permit shall be issued for any building or
 structure or part thereof located within the transportation
 corridor, nor shall approval of a subdivision, as defined in
 G.S. 153A-335 and G.S. 160A-376, be granted with respect
 to property within the transportation corridor.” Id. § 136-
 44.51(a)[.] . . . Despite the restrictions on improvement,
 development, and subdivision of the affected property, or
 the tax benefits provided, NCDOT is not obligated to build
 or complete the highway project.

 ....

 Plaintiffs are landowners whose properties are
 located within either the Western or Eastern Loops of the

 -7-
 BEROTH OIL CO. V. NC DEP’T OF TRANSP.

 Opinion of the Court

Northern Beltway, a highway project planned around
Winston-Salem. Plaintiffs allege that the project “has been
planned since 1965, and shown on planning maps since at
least 1987 with the route determined by the early 1990s.”

 On 6 October 1997, in accordance with the Map Act,
NCDOT recorded a highway transportation corridor map
with the Forsyth County Register of Deeds that plotted the
Western Loop of the Northern Beltway. Plaintiffs whose
properties are located within the Western Loop had all
acquired their properties before NCDOT recorded the
pertinent corridor map. On 26 November 2008, NCDOT
recorded a second map that plotted the Eastern Loop.
Plaintiffs whose properties are located within the Eastern
Loop had also purchased their properties before NCDOT
recorded that corridor map, some as recently as 2006. The
parties do not dispute that the Map Act imposed
restrictions on property development and division as soon
as NCDOT recorded the corridor maps.

 The NCDOT has voluntarily purchased at least 454
properties within the beltway through condemnation
proceedings, and since July 2010, has continued to
purchase property located in the Western and Eastern
Loops. In June 2013, NCDOT announced a public hearing
regarding modification of the Western Loop boundaries,
noting that “[a] ‘Protected Corridor’ has been identified
that includes the areas of the beltway that the Department
expects to purchase to build the proposed road.” At the
hearing an NCDOT official advised that “no funding for the
proposed Western Section of the Northern Beltway had
been included in the current” budget through 2020 and
that there was “no schedule” establishing when
construction would start.

 From October 2011 to April 2012, following denial of
their motion for class certification, Beroth Oil Co. v.
NCDOT (Beroth II), 367 N.C. 333, 347, 757 S.E.2d 466, 477
(2014), aff’g in part and vacating in part Beroth Oil Co. v.
NCDOT (Beroth I), 220 N.C. App. 419, 725 S.E.2d 651

 -8-
 BEROTH OIL CO. V. NC DEP’T OF TRANSP.

 Opinion of the Court

(2012), plaintiffs filed separate complaints against
NCDOT, asserting various, similar constitutional claims
related to takings without just compensation, including
inverse condemnation. On 31 July 2012, the Chief Justice
certified plaintiffs’ cases as “exceptional” under Rule 2.1 of
the General Rules of Practice for the Superior and District
Courts, and the trial court subsequently consolidated
plaintiffs into the same group for case management
purposes.

 The NCDOT timely answered, asserted various
affirmative defenses, including, inter alia, lack of standing,
and moved to dismiss plaintiffs’ claims under Rules
12(b)(1), 12(b)(2), and 12(b)(6) of the North Carolina Rules
of Civil Procedure. On 8 January 2013, the trial court
entered an order denying NCDOT's motion to dismiss the
claim for inverse condemnation.

 All parties moved for summary judgment. The trial
court first determined that plaintiffs failed to establish a
taking, reasoning that “a regulatory taking” by police
power only occurs when the legislation “deprive[s] the
property of all practical use, or of all reasonable value”
(citing and quoting Beroth I, 220 N.C. App. at 436-39, 725
S.E.2d at 661-63), and that the “mere recording of project
maps do[es] not constitute a taking” (citing, inter alia,
Browning v. N.C. State Highway Comm'n, 263 N.C. 130,
135-36, 139 S.E.2d 227, 230-31 (1964)). Therefore, the trial
court concluded the inverse condemnation claim was “not
yet ripe” and granted summary judgment for NCDOT,
dismissing the claim without prejudice. Plaintiffs appealed
the dismissal and summary judgment orders to the Court
of Appeals, and NCDOT cross-appealed the same, arguing
for dismissal “with prejudice.”

 The Court of Appeals reversed the dismissal of
plaintiffs’ inverse condemnation claim. Kirby [I]. The
Court of Appeals concluded that, unlike regulations under
the police power, which the State deploys to protect the
public from injury, “the Map Act is a cost-controlling

 -9-
 BEROTH OIL CO. V. NC DEP’T OF TRANSP.

 Opinion of the Court

 mechanism,” id. at [363], 769 S.E.2d at 232, that employs
 the power of eminent domain, allowing NCDOT “to
 foreshadow which properties will eventually be taken for
 roadway projects and in turn, decrease the future price the
 State must pay to obtain those affected parcels,” id. at
 [363], 769 S.E.2d at 232 (quoting Beroth II, 367 N.C. at 349,
 757 S.E.2d at 478 (Newby, J., dissenting in part and
 concurring in part)). The Court of Appeals determined that
 the Map Act imposed restrictions on “Plaintiffs’ ability to
 freely improve, develop, and dispose of their own property,”
 id. at [367], 769 S.E.2d at 235, that “never expire,” id. at
 [366], 769 S.E.2d at 234 (quoting Beroth II, 367 N.C. at 349,
 757 S.E.2d at 478), and that, as a result, the Map Act
 effectuated a taking of their “elemental [property] rights,”
 id. at [366], 769 S.E.2d at 234. Therefore, the Court of
 Appeals concluded that plaintiffs’ inverse condemnation
 claim was ripe and remanded the matter for a “discrete
 fact-specific inquiry,” id. at [368], 769 S.E.2d at 235
 (quoting and discussing Beroth II, 367 N.C. at 343, 757
 S.E.2d at 474 (majority opinion)), to determine “the
 amount of compensation due,” id. at [368], 769 S.E.2d at
 236.

Kirby II, 368 N.C. at 848-52, 786 S.E.2d at 921-23 (footnotes omitted).

 The Supreme Court granted NCDOT’s petition for discretionary review, and

affirmed this Court’s opinion in Kirby I. Specifically, the Supreme Court held, inter

alia: “The language of the Map Act plainly points to future condemnation of land in

the development of corridor highway projects, thus requiring NCDOT to invoke

eminent domain.” Id. at 854, 786 S.E.2d at 925. “The Map Act's indefinite restraint

on fundamental property rights is squarely outside the scope of the police power.” Id.

at 855, 786 S.E.2d at 925. “Justifying the exercise of governmental power in this way

would allow the State to hinder property rights indefinitely for a project that may

 - 10 -
 BEROTH OIL CO. V. NC DEP’T OF TRANSP.

 Opinion of the Court

never be built.” Id. “The societal benefits envisioned by the Map Act are not designed

primarily to prevent injury or protect the health, safety, and welfare of the public.

Furthermore, the provisions of the Map Act that allow landowners relief from the

statutory scheme are inadequate to safeguard their constitutionally protected

property rights.” Id.

 The Supreme Court concluded by stating that:

 Through inverse condemnation the owner may
 recover to the extent of the diminution in his property's
 value as measured by the difference in the fair market
 value of the property immediately before and immediately
 after the taking. Obviously, not every act or happening
 injurious to the landowner, his property, or his use thereof
 is compensable. Thus, to pursue a successful inverse
 condemnation claim, a plaintiff must demonstrate not only
 a substantial interference with certain property rights but
 also that the interference caused a decrease in the fair
 market value of his land as a whole.

 By recording the corridor maps at issue here, which
 restricted plaintiffs’ rights to improve, develop, and
 subdivide their property for an indefinite period of time,
 NCDOT effectuated a taking of fundamental property
 rights. On remand, the trier of fact must determine the
 value of the loss of these fundamental rights by calculating
 the value of the land before the corridor map was recorded
 and the value of the land afterward, taking into account all
 pertinent factors, including the restriction on each
 plaintiff's fundamental rights, as well as any effect of the
 reduced ad valorem taxes. Accordingly, the trial court
 improperly dismissed plaintiffs' inverse condemnation
 claim.

Id. at 855-56, 786 S.E.2d at 925-26 (citations and internal quotation marks omitted).

 - 11 -
 BEROTH OIL CO. V. NC DEP’T OF TRANSP.

 Opinion of the Court

 After the case was remanded, the trial court entered the order herein appealed

on October 3, 2016, which had followed the instructions given by both Appellate

Courts. That order granted Plaintiffs’ motion for partial judgment on the pleadings

pursuant to Rule 12(c) of the North Carolina Rules of Civil Procedure, finding a

taking of Plaintiffs’ fundamental property rights had occurred by inverse

condemnation; granted Plaintiffs’ partial summary judgment finding a taking; and

established the rules and procedures by which NCDOT would file plats, appraise

Plaintiffs’ properties, deposit just compensation, as well as any hearing or trial

schedules and procedures as may be required moving forward. NCDOT timely

appealed.

 Analysis

 “The threshold question is whether this case is properly before us.” Burlington

Industries, Inc. v. Richmond County, 90 N.C. App. 577, 579, 369 S.E.2d 119, 120

(1988) (citing In re Watson, 70 N.C. App. 120, 318 S.E.2d 544 (1984), disc. review

denied, 313 N.C. 330, 327 S.E.2d 900 (1985)). An order is either “interlocutory or the

final determination of the rights of the parties.” N.C. Gen. Stat. § 1A-1, Rule 54(a)

(2015). As a general principal, “there is no right to appeal from an interlocutory

order.” Darroch v. Lea, 150 N.C. App. 156, 158, 563 S.E.2d 219, 221 (2002) (citation

omitted). “An appeal is interlocutory when noticed from an order entered during the

pendency of an action, which does not dispose of the entire case and where the trial

 - 12 -
 BEROTH OIL CO. V. NC DEP’T OF TRANSP.

 Opinion of the Court

court must take further action in order to finally determine the rights of all parties

involved in the controversy.” Peterson v. Dillman, ___ N.C. App. ___, ___, 782 S.E.2d

362, 365 (2016) (citation omitted). Here, the appealed order did not resolve all issues

of this case and is interlocutory. The trial court, along with NCDOT, had further

actions required before a final determination of all rights of all parties could be made.

 NCDOT has argued that N.C. Gen. Stat. § 1-277 gives it grounds for immediate

review. Section 1-277 states, in pertinent part, that “[a]n appeal may be taken from

every judicial order or determination of a judge of a superior or district court, upon

or involving a matter of law or legal inference, whether made in or out of session,

which affects a substantial right claimed in any action or proceeding.” N.C. Gen.

Stat. § 1-277(a) (2015). For this Court to have jurisdiction for interlocutory review of

the appealed order, NCDOT, as “the appellant[,] has the burden of showing this Court

that the order deprives the appellant of a substantial right which would be

jeopardized absent a review prior to a final determination on the merits.” Jeffreys v.

Raleigh Oaks Joint Venture, 115 N.C. App. 377, 380, 444 S.E.2d 252, 254 (1994).

NCDOT must also bear

 the burden of demonstrating that the order from which [it]
 seeks to appeal is appealable despite its interlocutory
 nature. Thus, the extent to which an appellant is entitled
 to immediate interlocutory review of the merits of [its]
 claims depends upon [it] establishing that the trial court's
 order deprives the appellant of a right that will be
 jeopardized absent review prior to final judgment.

 - 13 -
 BEROTH OIL CO. V. NC DEP’T OF TRANSP.

 Opinion of the Court

Richmond Cnty. Bd. of Educ. v. Cowell, 225 N.C. App. 583, 585, 739 S.E.2d 566, 568

(citations and internal quotation marks omitted), disc. review denied, 367 N.C. 215,

747 S.E.2d 553 (2013). “The appellants must present more than a bare assertion that

the order affects a substantial right; they must demonstrate why the order affects a

substantial right.” Hoke Cnty. Bd. of Educ. v. State, 198 N.C. App. 274, 277-78, 679

S.E.2d 512, 516 (citation omitted), disc. review denied, 363 N.C. 653, 686 S.E.2d 515

(2009).

 “As our Supreme Court candidly admitted, the ‘substantial right’ test is more

easily stated than applied. It is usually necessary to resolve the question in each case

by considering the particular facts of that case and the procedural context[.]” LaFalce

v. Wolcott, 76 N.C. App. 565, 568, 334 S.E.2d 236, 238 (1985) (citation and internal

quotation marks omitted). In determining the appealability of interlocutory orders

under the substantial right exception, a two-part test has evolved: (1) “the right itself

must be ‘substantial,’ ” and (2) “the enforcement of the substantial right must be lost,

prejudiced or be less than adequately protected by exception to entry of the

interlocutory order.” J & B Slurry Seal Co. v. Mid-South Aviation, Inc., 88 N.C. App.

1, 5-6, 362 S.E.2d 812, 815 (1987).

 Some of our previous “decisions have apparently blurred or otherwise failed to

distinguish the two requirements of appealability under the substantial right

exception.” Id. at 6, 362 S.E.2d at 815 (citing, e.g., New Bern Assoc. v. The Celotex

 - 14 -
 BEROTH OIL CO. V. NC DEP’T OF TRANSP.

 Opinion of the Court

Corp., 87 N.C. App. 65, 359 S.E.2d 481, 483 (1987) (defining “substantial right” as

“one which will be lost”)). “More important, some decisions have completely omitted

the requirement that the right be lost or prejudiced if not immediately appealed.” Id.

at 6, 362 S.E.2d at 816. “While we value the case-by-case flexibility afforded us by

the substantial right test, appellate application of this statutory test need not be so

uncertain or inconsistent that premature or fragmentary appeals are needlessly

encouraged.” Id. at 9, 362 S.E.2d at 817. Bearing all of these considerations in mind,1

we address each of NCDOT’s arguments attempting to establish grounds for

interlocutory review.

 I. Title & Area Taken

 First, NCDOT has asserted that our immediate review is proper because

“interlocutory orders concerning title or area taken must be immediately appealed as

vital preliminary issues involving substantial rights adversely affected.” N.C. Dep’t

Of Transp. v. Stagecoach Village, 360 N.C. 46, 48, 619 S.E.2d 495, 496 (2005) (citation

and internal quotation marks omitted). However, this substantial right accrues only

 1 We especially note that our controlling precedent has established a two-part test for the
determination of whether it is appropriate for us to address the merits of an appeal, as opposed to
dismissing an appeal as premature. The dissent would allow the merits of this appeal to be reached
merely because NCDOT has asserted sovereign immunity or the expending of resources as a
substantial right. Simply stating something that has been held to be a substantial right is not
sufficient; it must be shown that the appellant possesses the right, that the right is substantial, and
that the right would be lost absent interlocutory review. Accordingly, nowhere does the dissent explain
how these ‘substantial rights’ would be lost if interlocutory review was not granted. Furthermore, the
dissent conflates reaching the merits of NCDOT’s claims with what we are commanded to do: to look
at the facts and circumstances of the case to determine whether interlocutory review is appropriate.

 - 15 -
 BEROTH OIL CO. V. NC DEP’T OF TRANSP.

 Opinion of the Court

to one who holds an interest in the subject property of the eminent domain

proceeding, if title to the interest is contested, or to a party who contends that the

area taken is different from that identified by the condemnor on the map or plat of

the land taken filed by the condemnor pursuant to Article 9 of Chapter 136.

Lautenschlager v. Board of Transportation, 25 N.C. App. 228, 212 S.E.2d 551, cert.

denied, 287 N.C. 260, 214 S.E.2d 431 (1975). See N.C. Gen. Stat. §§ 136-104, -108,

and -111 (2015); see also Berta v. Highway Comm., 36 N.C. App. 749, 754-55, 245

S.E.2d 409, 412 (1978) (“The provisions of G.S. 136-108 apply to condemnation

proceedings under G.S. 136-111 as well as under G.S. 136-104.” (citation omitted)).

 In Article 9, Section 108 provides:

 After the filing of the plat, the judge, upon motion and 10
 days’ notice by either the Department of Transportation or
 the owner, shall, either in or out of term, hear and
 determine any and all issues raised by the pleadings other
 than the issue of damages, including, but not limited to, if
 controverted, questions of necessary and proper parties,
 title to the land, interest taken, and area taken.

N.C. Gen. Stat. § 136-108 (2015) (emphasis added).

 The government authority effectuating the taking has no substantial right

justifying interlocutory review of an order concerning title or area taken unless and

until that condemnor has filed a map or plat pursuant to Article 9 identifying the

property subject to eminent domain proceedings and condemnation. In this case, the

order being appealed by NCDOT established, inter alia, the procedures and timetable

by which NCDOT would file plats identifying the interests and areas taken so as to

 - 16 -
 BEROTH OIL CO. V. NC DEP’T OF TRANSP.

 Opinion of the Court

comply with Article 9. Therefore, asserting that NCDOT has a substantial right

justifying interlocutory review affected by a decision involving title and area taken is

premature, at best.

 NCDOT also cites to Kirby I in asserting that “an order granting partial

summary judgment on the issue of NCDOT’s liability to pay just compensation for a

claim of inverse condemnation is an immediately appealable interlocutory order

affecting a substantial right.” Kirby I, 239 N.C. App. at 354, 769 S.E.2d at 227.

NCDOT further argues that the trial court’s order impacts the identical rights that

were impacted in Kirby I and II, but from the perspective of the opposite party. This

argument is without merit because it asks that we allow previously decided matters

to be re-litigated. Of course the order impacts the identical rights but from the

opposite party’s perspective. This Court, as affirmed by the Supreme Court, reversed

the trial court on this issue. For that reason, the trial court did as directed and

ordered that summary judgment be granted to the “opposite party” than to the party

it had been previously granted.

 NCDOT has not carried its burden of demonstrating that the order from which

it seeks to appeal is appealable despite its interlocutory nature because it is unable

to show that, as an order involving title and area taken, the order has in fact affected

a substantial right of NCDOT. Therefore, we must address NCDOT’s second asserted

ground for interlocutory appellate review.

 - 17 -
 BEROTH OIL CO. V. NC DEP’T OF TRANSP.

 Opinion of the Court

 II. Sovereign Immunity

 NCDOT has asserted sovereign immunity as a substantial right justifying our

interlocutory review. “The preeminent purpose of state sovereign immunity is to

accord States the dignity that is consistent with their status as sovereign entities.”

Fed. Mar. Comm’n v. S.C. State Ports Auth., 535 U.S. 743, 760, 152 L. Ed. 2d 962, 977

(2002). Our Supreme Court has long held that “[i]t is an established principle of

jurisprudence, resting on grounds of sound public policy, that a state may not be sued

in its own courts or elsewhere unless by statute it has consented to be sued or has

otherwise waived its immunity from suit.” Smith v. Hefner, 235 N.C. 1, 6, 68 S.E.2d

783, 787 (1952) (citations omitted).

 The common law doctrine of sovereign immunity is a defense to a claim of

personal jurisdiction, with specific, legislatively created exceptions, and “mandates

that ‘the State of North Carolina is immune from suit unless and until it expressly

consents to be sued.’ ” Coastland Corp. v. N.C. Wildlife Resources Comm’n, 134 N.C.

App. 343, 346, 517 S.E.2d 661, 663 (1999) (brackets omitted) (quoting State v. Taylor,

322 N.C. 433, 435, 368 S.E.2d 601, 602, reh’g denied, 322 N.C. 838, 371 S.E.2d 284

(1988)). Sovereign immunity is an entire defense, the successful use of which

precludes a party or the courts from forcing the State to answer a suit, not a

substantial right justifying interlocutory review of an adverse ruling on a technical

question within a suit. See Burlington Industries, Inc., 90 N.C. App. 577, 369 S.E.2d

 - 18 -
 BEROTH OIL CO. V. NC DEP’T OF TRANSP.

 Opinion of the Court

119; Love v. Moore, 305 N.C. 575, 291 S.E.2d 141, reh’g denied, 306 N.C. 393, ___

S.E.2d ___ (1982).

 While, particular to this case, “[t]he power of eminent domain, that is, the right

to take private property for public use, is inherent in sovereignty,” Morganton v.

Hutton & Bourbonnais Company, 251 N.C. 531, 533, 112 S.E.2d 111, 113 (1960),

sovereign immunity must be juxtaposed with the contrary sovereignty of the

individual, whose natural rights preceded government and were enumerated in the

federal Bill of Rights and our own State Constitution’s Declaration of Rights. Our

Supreme Court held that “[t]he doctrine of sovereign immunity cannot stand as a

barrier to North Carolina citizens who seek to remedy violations of their rights

guaranteed by the Declaration of Rights.” Corum v. University of North Carolina,

330 N.C. 761, 785-86, 413 S.E.2d 276, 291, reh’g denied, 331 N.C. 558, 418 S.E.2d

664, cert. denied sub nom. Durham v. Corum, 506 U.S. 985, 121 L. Ed. 2d 431 (1992).

 In American jurisprudence, the rights and powers of our duel sovereigns,

federal and state, were created through a grant of power from the citizens themselves

and are derivative of the “certain unalienable rights” endowed to all persons by their

Creator. The Declaration of Independence para. 2 (U.S. 1776); see also N.C. Const.

art. I, § 1 (“We hold it to be self-evident that all persons are created equal; that they

are endowed by their Creator with certain inalienable rights; that among these are

life, liberty, the enjoyment of the fruits of their own labor, and the pursuit of

 - 19 -
 BEROTH OIL CO. V. NC DEP’T OF TRANSP.

 Opinion of the Court

happiness.”); § 2 (“All political power is vested in and derived from the people; all

government of right originates from the people, is founded upon their will only, and

is instituted solely for the good of the whole.”). The state was created as sovereign to

secure these natural rights of her citizens, Declaration of Independence para. 2 (U.S.

1776) (“That to secure these rights, Governments are instituted among Men, deriving

their just powers from the consent of the governed . . . .”), and “[s]uch constitutional

rights are a part of the supreme law of the State.” Corum, 330 N.C. at 786, 413 S.E.2d

at 291-92 (citing State ex rel. Martin v. Preston, 325 N.C. 438, 385 S.E.2d 473 (1989)).

“[T]he doctrine of sovereign immunity is not a constitutional right; it is a common law

theory or defense established by [our Supreme] Court . . . . Thus, when there is a clash

between these constitutional rights and sovereign immunity, the constitutional rights

must prevail.” Id. at 786, 413 S.E.2d at 292.

 Every expropriation of a citizen’s fruits of his or her labor by the government

is a taking, whether through taxation or by the power of eminent domain. However,

of all rights enumerated in our constitutions, only the taking of an individual’s

property rights by the sovereign for public use requires remuneration. This right

“was designed to bar Government from forcing some people alone to bear public

burdens which, in all fairness and justice, should be borne by the public as a whole.”

Armstrong v. United States, 364 U.S. 40, 49, 4 L. Ed. 2d 1554, 1561 (1960).

 - 20 -
 BEROTH OIL CO. V. NC DEP’T OF TRANSP.

 Opinion of the Court

 Both our State and Federal Constitutions condition the exercise of eminent

domain with the required payment of just compensation. “Although the North

Carolina Constitution does not expressly prohibit the taking of private property for

public use without payment of just compensation, our Supreme Court has considered

this fundamental right as part of the ‘law of the land’ clause in article I, section 19 of

our Constitution.” Guilford Co. Dept. of Emer. Serv. v. Seaboard Chemical Corp., 114

N.C. App. 1, 11, 441 S.E.2d 177, 182-83 (citation omitted), disc. review denied, 336

N.C. 604, 447 S.E.2d 390 (1994). Furthermore, the Fifth Amendment to the United

States Constitution requires that just compensation be paid when private property

be taken for public use. U.S. Const. amend V. Through the due process clause of the

Fourteenth Amendment to the Federal Constitution, the Fifth Amendment applies

this condition for taking private property for public use to the states. Delaware, L.,

& W.R. Co. v. Town of Morristown, 276 U.S. 182, 193, 72 L. Ed. 523, 528 (1928). “The

constitutional guaranty of just compensation is not a limitation of the power to take,

but only a condition of its exercise.” Long Island Water-Supply Co. v. City of Brooklyn,

166 U.S. 685, 689, 41 L. Ed. 1165, 1166 (1897).

 Our General Assembly has expressly granted NCDOT the power of eminent

domain. N.C. Gen. Stat. § 136-18 and -19 (2015). In establishing a framework by

which NCDOT can condemn private property, it also conferred statutory rights to

landowners by which they could seek just compensation, in addition to their

 - 21 -
 BEROTH OIL CO. V. NC DEP’T OF TRANSP.

 Opinion of the Court

Constitutional right. See N.C.G.S. Chpt. 136, Art. 9 (2015). To hold the State

accountable for payment of just compensation following a taking of private property,

a landowner must approach the sovereign in her courts by filing suit pursuant to

statute. Id. This is true even though “[t]he right to compensation for property taken

under the power of eminent domain does not rest solely upon statute because property

owners have a constitutional right to just compensation for takings.” Ferrell v. Dept.

of Transportation, 104 N.C. App. 42, 46, 407 S.E.2d 601, 604 (1991) (citing Browning

v. Highway Commission, 263 N.C. 130, 137, 139 S.E.2d 227, 231 (1964)), aff'd, 334

N.C. 650, 435 S.E.2d 309 (1993).

 Because the General Assembly has established the statutory framework

conferring rights to landowners when the State has exercised its eminent domain

power, the State has implicitly waived sovereign immunity to the extent of the rights

afforded in Chapter 136 of our General Statutes. Ferrell, 334 N.C. at 655, 435 S.E.2d

at 313. Therefore, to the extent the plaintiffs sub judice are within this framework

through which the State pays just compensation for a taking, sovereign immunity is

waived.

 However, NCDOT disputes that the plaintiffs have a right to just

compensation, and has consistently and strenuously argued that the trial court erred

in applying Section 111 of Chapter 136 to the cases in which no taking has been

admitted, and that error is what affects NCDOT’s substantial right justifying

 - 22 -
 BEROTH OIL CO. V. NC DEP’T OF TRANSP.

 Opinion of the Court

interlocutory review. Section 111 grants “any person whose land or compensable

interest therein” a remedy when said land or interest has been taken and no

declaration of taking has been filed by NCDOT, as is the case here. Section 111

states, in pertinent part, that:

 if said taking is admitted by the Department of
 Transportation, it shall, at the time of filing answer,
 deposit with the court the estimated amount of
 compensation for said taking and notice of said deposit
 shall be given to said owner. Said owner may apply for
 disbursement of said deposit and disbursement shall be
 made in accordance with the applicable provisions of G.S.
 136-105 of this Chapter. If a taking is admitted, the
 Department of Transportation shall, within 90 days of the
 filing of the answer to the complaint, file a map or plat of
 the land taken.

N.C. Gen. Stat. § 136-111 (2015).

 In its pleadings filed prior to July 15, 2015, NCDOT consistently admitted that

it had filed transportation corridor maps for the Northern Beltway, that the filing of

the maps placed restrictions upon the properties located within the corridor’s borders,

and that the property of the particular plaintiff to whose complaint NCDOT was

responding was within the corridor’s borders. As our Supreme Court held, “[t]hese

restraints, coupled with their indefinite nature, constitute a taking of plaintiffs’

elemental property rights by eminent domain.” Kirby II, 368 N.C. at 848, 786 S.E.2d

at 921.

 However, NCDOT consistently denied that a taking had occurred. In all

pleadings filed post-July 15, 2015, NCDOT made a general denial of all allegations,

 - 23 -
 BEROTH OIL CO. V. NC DEP’T OF TRANSP.

 Opinion of the Court

even denying the existence of NCDOT as a legal entity and its ability to own property.

To those responses to allegations filed after July 15, 2015, the trial court applied what

it described in the order herein appealed as “the doctrine of legal estoppel” to hold

that NCDOT’s “general denials in its post-July 15, 2015 filings are legally untenable

and are therefore deemed admitted.”

 This deemed admission had the effect of placing the plaintiffs sub judice

squarely in the scope of Section 111, allowing them to enforce their right to just

compensation for the regulatory taking. Substantively, while calling the doctrine

used to establish this admission “legal estoppel,” the trial court applied the doctrine

of judicial estoppel, which has long been a part of the common law of North Carolina

but expressly adopted by our Supreme Court in Whitacre P’ship v. Biosignia, Inc., 358

N.C. 1, 591 S.E.2d 870 (2004).

 Whether our Supreme Court has held that a party “cannot swap horses in

midstream,” Roberts v. Grogan, 222 N.C. 30, 33, 21 S.E.2d 829, 830 (1942), should

not be permitted to “blow hot and cold in the same breath,” Kannan v. Assad, 182

N.C. 77, 78, 108 S.E. 383, 384 (1921) (citation and internal quotation marks omitted),

or needs to face “the lesson, taught every day in the school of experience, that he

cannot safely ‘run with the hare and hunt with the hound,’ ” Rand v. Gillette, 199

N.C. 462, 463, 154 S.E. 746, 747 (1930), it has consistently held that “a party to a suit

should not be allowed to change his position with respect to a material matter in the

 - 24 -
 BEROTH OIL CO. V. NC DEP’T OF TRANSP.

 Opinion of the Court

course of litigation.” Roberts, 222 N.C. at 33, 21 S.E.2d at 830-31 (citation and

internal quotation marks omitted). By prohibiting a litigant from changing positions,

“judicial estoppel seeks to protect courts, not litigants, from individuals who would

play fast and loose with the judicial system,” and is an inherently flexible and

discretionary doctrine. Whitacre P’ship, 358 N.C. at 26, 591 S.E.2d at 887 (citation

and internal quotation marks omitted). In

 [n]oting that the circumstances under which judicial
 estoppel may appropriately be invoked are probably not
 reducible to any general formulation of principle, [our
 Supreme] Court enumerated three factors that typically
 inform the decision whether to apply the doctrine in a
 particular case. First, a party's subsequent position must
 be ‘clearly inconsistent’ with its earlier position. Second,
 courts regularly inquire whether the party has succeeded
 in persuading a court to accept that party's earlier position,
 so that judicial acceptance of an inconsistent position in a
 later proceeding might pose a threat to judicial integrity by
 leading to inconsistent court determinations or the
 perception that either the first or the second court was
 misled. Third, courts consider whether the party seeking
 to assert an inconsistent position would derive an unfair
 advantage or impose an unfair detriment on the opposing
 party if not estopped.

Id. at 28-29, 591 S.E.2d at 888-89 (citations, internal quotation marks, and footnote

omitted).

 Before July 15, 2015, NCDOT admitted in its pleadings Plaintiffs’ allegations

that it had recorded the highway corridor map and that this recordation placed

restrictions on Plaintiffs’ fundamental property rights for an unlimited period of time.

It was this set of facts that established for our Supreme Court that a taking had

 - 25 -
 BEROTH OIL CO. V. NC DEP’T OF TRANSP.

 Opinion of the Court

occurred. See Kirby II, 368 N.C. 847, 786 S.E.2d 919. Pleadings filed after July 15,

2015 denied the allegations of these facts, which makes NCDOT’s subsequent

position ‘clearly inconsistent’ with its former position. Additionally, NCDOT’s prior

position was accepted by the courts to such an extent that, when this litigation was

previously before our Supreme Court, that Court used these facts as the structure

under which it found a taking had occurred. Judicial acceptance of NCDOT’s latter

inconsistent position does pose a threat to judicial integrity in that it could lead to

inconsistent court determinations or the perception that either the first or the second

court was misled.

 Finally, NCDOT is attempting to avoid payment of just compensation by

asserting a technical argument that, because NCDOT has admitted no taking, it

therefore will pay no just compensation. This inconsistent position gives NCDOT an

unfair advantage in that it effectively ends Plaintiffs’ statutory right to pursue a

cause of action seeking just compensation. This would most certainly impose an

unfair detriment on the Plaintiffs in that their alleged damages suffered as a result

of NCDOT’s actions would no longer be compensable. It is for these reasons that the

trial court found NCDOT’s general denials as legally untenable, and deemed the facts

establishing that each of the Plaintiffs’ properties were within the highway corridor

maps’ boundaries admitted.

 - 26 -
 BEROTH OIL CO. V. NC DEP’T OF TRANSP.

 Opinion of the Court

 Therefore, because the regulatory taking has effectively been admitted, the

Plaintiffs are within the scope of Section 111. Furthermore, because Plaintiffs are

suing under both the statutory framework of Section 111, as well as the constitutional

framework of takings, sovereign immunity provides no bar to Plaintiffs’ suit against

NCDOT.

 NCDOT also attempts to establish grounds for interlocutory review by

asserting within their sovereign immunity argument that our constitutional

framework of a tripartite system of government prohibits the judicial branch from

enforcing collection of liabilities against the executive branch, citing Article V, Section

7 of the State Constitution. Specifically, NCDOT argues that the trial court may not

order it to make deposits with the court the estimated amount of compensation for

the takings at issue here because said takings have not been admitted by NCDOT. It

is this alleged violation of the constitutionally-mandated separation of powers that

NCDOT contends further gives it a substantial right affected by the trial court’s order

which justifies immediate review.

 However, as discussed above, the taking contested here has been established

and was deemed to have been admitted. As also discussed above, this admission has

brought the Plaintiffs’ claims within the scope of Section 111, and it is this statute

that allows the Plaintiffs an avenue by which they can be compensated for the taking.

Therefore, this argument must also fail and we dismiss this appeal.

 - 27 -
 BEROTH OIL CO. V. NC DEP’T OF TRANSP.

 Opinion of the Court

 We must finally note that NCDOT closed its attempt to establish grounds for

appellate review with the brief policy argument that irreparable harm would be done

to the taxpayers of this state if it is forced to pay deposits to the court for the takings

here. While it is admirable to protect the public purse and spend it wisely, this

argument is not helpful at this point in the litigation. This should have been a

consideration before the highway corridor map was filed. The constitutional right to

just compensation when the state takes an individual’s private property rights for

public use will not be suspended on the mere fact that it may be expensive.

 The decision to select certain property on which the state exercises its power

of eminent domain is a political decision outside the purview of the judicial branch.

“Under our division of governmental power into three branches, executive, legislative

and judicial, the right to authorize the exercise of the power of eminent domain, and

the mode of the exercise thereof, is wholly legislative.” Hedrick v. Graham, 245 N.C.

249, 256, 96 S.E.2d 129, 134 (1957) (citations omitted). In explaining this division of

power among the various branches, our Supreme Court cited with approval 18 Am.

Jur. Eminent Domain § 9 (1938) which contained the following:

 The executive branch of the government cannot, without
 the authority of some statute, proceed to condemn property
 for its own uses. . . . Once authority is given to exercise the
 power of eminent domain, the matter ceases to be wholly
 legislative. The executive authorities may then decide
 whether the power will be invoked and to what extent, and
 the judiciary must decide whether the statute authorizing
 the taking violates any constitutional rights; and the fixing

 - 28 -
 BEROTH OIL CO. V. NC DEP’T OF TRANSP.

 Opinion of the Court

 of the compensation is wholly a judicial question.

State v. Club Properties, 275 N.C. 328, 334-35, 167 S.E.2d 385, 389 (1969) (citation

and internal quotation marks omitted); accord, 26 Am. Jur. 2d Eminent Domain § 5

(2017).

 The State’s judiciary provides the avenue by which the amount of

compensation here will be fixed. While there will be a high monetary price, and

conceivably a political price as well, once NCDOT pays just compensation for

exercising its eminent domain power, perhaps this will force NCDOT to respect the

rights of our individual citizens and not restrict their rights without the ability or

willingness to pay.

 Conclusion

 It was NCDOT that had complete discretion in selecting which parcels of

property it would subject to the regulations allowed by the Map Act when it recorded

the highway transportation corridor map for the Northern Beltway’s Western Loop

on October 6, 1997 and Eastern Loop on November 26, 2008. NCDOT has been

unable to establish grounds for interlocutory review in this appeal, and we must

therefore dismiss. At this juncture, it is NCDOT that must follow the order of the

trial court appealed herein and file plats or maps, without further delay, identifying

interests and areas taken to comply with G.S. § 136-111 and with the clear mandates

of this Court in Kirby I, and our Supreme Court in Kirby II.

 - 29 -
 BEROTH OIL CO. V. NC DEP’T OF TRANSP.

 Opinion of the Court

 Following this, as per the appealed order, either party may schedule a hearing

pursuant to Section 108 from which the trial court would determine any and all issues

raised by the pleadings other than the issue of damages. The measure of damages

can then be determined by a jury pursuant to N.C. Gen. Stat. § 136-112, to which the

trial court shall add interest accrued from the date of the taking to the date of

judgment pursuant to N.C. Gen. Stat. § 136-113, as well as reimbursement of costs,

disbursements, and expenses pursuant to N.C. Gen. Stat. § 136-119.

 As previously discussed, because it is “necessary to resolve the question in each

case by considering the particular facts of that case and the procedural context in

which the order from which appeal is sought was entered[,] . . . the particular facts

and procedural history of the case at bar warrant a dismissal.” Moose v. Nissan of

Statesville, 115 N.C. App. 423, 430, 444 S.E.2d 694, 699 (1994) (citations and internal

quotation marks omitted).

 DISMISSED.

 Judge ZACHARY concurs.

 Judge DILLON dissents with separate opinion.

 - 30 -
 No. COA 17-74 – BEROTH OIL CO. v. NC DEPT. OF TRANSP.

 DILLON, Judge, dissenting.

 This appeal involves a number of actions brought by landowners claiming that

NCDOT has “taken” interests in their land by filing of maps showing future highway

projects pursuant to the Map Act. The trial court entered an order determining that

NCDOT’s filing of the maps constituted a taking and directed NCDOT to post deposits

(which may be taken down by the landowners) and to file maps or plats regarding the

taking, pursuant to N.C. Gen. Stat. § 136-111. NCDOT has appealed the trial court’s

order, essentially arguing that since it has not admitted to the taking, it cannot be

forced to post deposits and file maps/plats at this stage of the litigation.

 I agree with the majority that NCDOT has factually admitted to a taking in its

pleadings and, therefore, must comply with the order of the trial court. I disagree,

however, with the majority’s mandate to dismiss the appeal based on the majority’s

conclusion that we lack appellate jurisdiction to consider NCDOT’s appeal. Rather,

I conclude that we have jurisdiction to consider the merits of NCDOT’s argument.

However, on the merits, I would side with the landowners (as the majority essentially

has done) and would affirm the order of the trial court.

 In determining our appellate jurisdiction, we are not to look at the merits of

NCDOT’s claim to a substantial right in answering the threshold jurisdictional

question. To do so would, in the words of the United States Supreme Court,

“conflat[e] the jurisdictional question with the merits of the appeal.” Arthur Andersen

LLP, v. Carlisle, 556 U.S. 624, 628 (2009) (“Jurisdiction over the appeal, however,
 BEROTH OIL CO. V. N.C. DEPT. OF TRANSP.

 DILLON, J., dissenting

must be determined by focusing on the category of order appealed from, rather than

upon the strength of the grounds for reversing the order.”) In other words, in

considering whether we have appellate jurisdiction, we are to ask whether the right

claimed by the appellant is one that is substantial and whether the order appealed

from would affect that right, assuming appellant’s claim to that right has merit. Only

after we determine that we have jurisdiction do we consider the merits of the

appellant’s argument.

 Our Supreme Court’s opinion in Turner v. Hammocks Beach Corp., 363 N.C.

555, 681 S.E.2d 770 (2009), is extremely instructive, if not controlling on this point.

In that case, the defendants moved the trial court to dismiss an action based on

collateral estoppel; the trial court denied the motion; the defendants appealed; and a

panel of our Court held that we had jurisdiction to review the interlocutory order and,

on the merits, agreed with the defendants that collateral estoppel was implicated

and, therefore, reversed the trial court’s order. Id. The plaintiffs appealed to our

Supreme Court, which recognized the two separate issues before it were to first

consider the existence of appellate jurisdiction and then consider the merits of the

defendants’ collateral estoppel argument:

 “This case presents two issues. First we must determine
 whether the trial court’s interlocutory order denying
 defendant’s motion to dismiss is suitable for immediate
 appellate review. If that order is immediately appealable,
 we must then decide whether the trial court erred in
 denying defendant’s motion to dismiss.”

 -2-
 BEROTH OIL CO. V. N.C. DEPT. OF TRANSP.

 DILLON, J., dissenting

Id. at 555-56, 681 S.E.2d at 772. On the first issue, our Supreme Court, without

considering the merits of the defendants’ argument, concluded that there was

appellate jurisdiction over the appeal:

 “[Collateral estoppel] is designed to prevent repetitious
 lawsuits, and parties have a substantial right to avoid
 litigating issues that have already been determined by a
 final judgment. We therefore hold that a substantial right
 was affected by the trial court’s denial of defendant’s
 motion to dismiss, and proceed to the merits of defendant’s
 appeal.”

Id. at 558, 681 S.E.2d at 773. Then, on the second issue, our Supreme Court

addressed the merits of the defendants’ collateral estoppel argument and concluded

that the defendants’ collateral estoppel argument had no merit after all:

 “We affirm the portion of the Court of Appeals opinion
 holding that the trial court’s order is immediately
 appealable, [but] we reverse the Court of Appeals’ holding
 that the trial court erred in denying defendant’s motion to
 dismiss.”

Id. at 562, 681 S.E.2d at 775-76.1

 1 In NCDOT v. Blue, 147 N.C. App. 596, 556 S.E.2d 609 (2001), we held that we had jurisdiction
over NCDOT’s appeal of an interlocutory order based on its claimed right to sovereign immunity. Id.
at 600, 556 S.E.2d at 615. But then after recognizing our appellate jurisdiction, we rejected the merits
of NCDOT’s sovereign immunity argument, concluding that NCDOT had waived sovereign immunity;
and, therefore, we affirmed the trial court’s order. Id. at 601, 556 S.E.2d at 616. In other words, we
did not dismiss the appeal based on our determination on the merits of NCDOT’s claim of sovereign
immunity. Rather, we assumed the NCDOT’s claim had merit in determining our jurisdiction; and,
only after invoking appellate jurisdiction did we consider the merits. See also Meherrin Indian Tribe
v. Lewis, 197 N.C. App. 380, 677 S.E.2d 203 (2009) (denying an appellee’s motion to dismiss appeal of
an interlocutory order where the appellant claimed sovereign immunity, but affirming the order after
determining that the Meherrin Tribe was not an indigenous tribe which enjoyed sovereign immunity).

 -3-
 BEROTH OIL CO. V. N.C. DEPT. OF TRANSP.

 DILLON, J., dissenting

 Turning to the issue of whether NCDOT has claimed a right that is

“substantial,” NCDOT argues that the trial court’s order “compelling [NCDOT] to

make deposits, conduct title examinations, prepare maps, prepare appraisals, and

pay relocation expenses” affects a substantial right.2 Binding precedent compels us

to conclude that NCDOT has, indeed, succeeded in claiming a right which is

substantial. Specifically, in an opinion affirmed by our Supreme Court, we held that

“an order granting partial summary judgment on the issue of NCDOT’s liability to

pay just compensation for a claim for inverse condemnation is an immediately

appealable interlocutory order affecting a substantial right[.]” Kirby v. NCDOT, 239

N.C. App. 345, 354, 769 S.E.2d 218, 227 (2015), aff’d 368 N.C. 847, 786 S.E.2d 919

(2016). And here, the trial court determined that NCDOT was liable to pay just

compensation in these inverse condemnation actions.

 Further, our Supreme Court and our Court have held in other contexts that an

interlocutory order which compels a party to pay money or which forces a party to do

something affects a substantial right of that party and that, therefore, the party has

the right to immediate review of the order. For instance, in Wachovia Realty v.

 2 NCDOT makes this argument under the heading of “sovereign immunity.” The majority
rejects this argument in part, because “sovereign immunity” is a bar against being sued and this
litigation has progressed too far for it to be asserted. Though NCDOT labels its argument as a
“sovereign immunity” argument, the thrust of their argument, at least in part, does not concern their
immunity from suit, but rather that the trial court’s order determines that NCDOT is liable to pay
just compensation and directs NCDOT to expend its resources to file maps and post deposits. It is this
argument where I find NCDOT has alleged a substantial right, whatever its label.

 -4-
 BEROTH OIL CO. V. N.C. DEPT. OF TRANSP.

 DILLON, J., dissenting

Housing, Inc., our Supreme Court held that an interlocutory order directing a party

to pay money to the opposing party affected a substantial right and that it was error

for our Court to have dismissed the appeal “without passing upon the merits thereof.”

Wachovia Realty v. Housing, Inc., 292 N.C. 93, 100, 232 S.E.2d 667, 672 (1977). See

also Rockford-Cohen Group, LLC, v. N.C. Dep’t. of Ins., 230 N.C. App. 317, 320, 749

S.E.2d 469, 472 (2013) (holding that preliminary injunction against private company

affected a substantial right).

 Now reaching the merits of NCDOT’s argument, I agree with the majority that

the trial court got it right. Section 136-111 requires NCDOT to post a deposit and file

maps/plats in an inverse condemnation action where NCDOT has admitted to a

taking. And NCDOT has essentially admitted to a taking here by admitting to certain

facts. Specifically, our Supreme Court has held that a taking occurs where NCDOT

files a map pursuant to the Map Act and the map covers the property of the landowner

bringing the inverse condemnation claim. Kirby v. NCDOT, 368 N.C. 847, 856, 786

S.E.2d 919, 926 (2016) (“By recording the corridor maps [under the Map Act], NCDOT

effectuated a taking of fundamental property rights.”). And, based on Kirby, NCDOT

here has factually admitted to a taking by admitting that it has filed maps pursuant

to the Map Act which cover the properties of the Plaintiffs. It is not relevant that

NCDOT has also pleaded that it has not engaged in a taking, since this allegation is

a mere legal conclusion. NCDOT has admitted facts which, as a matter of law,

 -5-
 BEROTH OIL CO. V. N.C. DEPT. OF TRANSP.

 DILLON, J., dissenting

constitute a taking. It must, therefore, follow the procedures set forth in Section 136-

111 when it has admitted to a taking.

 In conclusion, I believe that NCDOT has clearly articulated a substantial right

that, if meritorious, is affected by the order of the trial court. The trial court has

determined NCDOT to be liable to pay just compensation and has ordered NCDOT to

engage in an expensive process of surveying and appraising a large number of tracts

in order to file maps and to post deposits. But on the merits, I believe that the trial

court acted appropriately in ordering NCDOT to follow this procedure based on

Section 136-111. Accordingly, my vote is to affirm the order of the trial court.

 -6-