DEPARTMENT OF TRANSPORTATION, Plaintiff v. MACK BLUE and BRENDA BLUE, Defendants

DEPARTMENT OF TRANSPORTATION, Plaintiff v. PIERCE B. IRBY, et al., Defendants

No. COA00-995

(Filed 18 December 2001)

## 1. Appeal and Error— appealability—interlocutory order— sovereign immunity defense—substantial right

Although the trial court's orders in a condemnation proceeding case are interlocutory based on the fact that the orders left pending the Department of Transportation's condemnation

actions against defendants, appeals from interlocutory orders raising issues of sovereign immunity affect a substantial right sufficient to warrant immediate appellate review.

2. **Eminent Domain— highway condemnation—arbitrary and capricious conduct—abuse of discretion—sovereign immunity defense**

The trial court did not err in a condemnation proceeding by denying the Department of Transportation's (DOT) motion to strike under N.C.G.S. § 1A-1, Rule 12(f) defendant property owners' second defense alleging that DOT engaged in arbitrary and capricious conduct and abused its agency discretion even though DOT asserted the defense of sovereign immunity and defendants may not raise the National Environmental Policy Act for a state project, nor may it obtain judicial review of the environmental documents at issue as part of their defense in this action, because: (1) DOT acquired title to defendants' land under N.C.G.S. § 136-19; and (2) the legislature has implicitly waived DOT's sovereign immunity to the extent of the rights afforded in N.C.G.S. § 136-19.

3. **Eminent Domain— highway condemnation—subject matter jurisdiction—judicial review of adverse agency determination**

The trial court did not err in a condemnation proceeding by granting the Department of Transportation's (DOT) motion to dismiss defendants' counterclaims alleging violations of the National Environmental Policy Act (NEPA) and the North Carolina Environmental Policy Act (NCEPA) based on lack of subject matter jurisdiction under N.C.G.S. § 1A-1, Rule 12(b)(1), because: (1) although defendants have satisfied the three requirements for judicial review of an adverse agency determination under N.C.G.S. § 150B-43, defendants failed to file a petition with the superior court within thirty days of DOT's publication of the Final Environmental Impact Statement on 1 December 1995 as required by N.C.G.S. § 150B-45; and (2) the record supports the conclusion that defendants knew or should have known of DOT's action by 1 December 1995.

Appeal by plaintiff and defendants from orders entered 10 March and 30 May 2000 by Judge Catherine C. Eagles in Moore County Superior Court. Heard in the Court of Appeals 27 August 2001.

DEPARTMENT OF TRANSP. v. BLUE

[147 N.C. App. 596 (2001)]

*Attorney General Roy Cooper, by Assistant Attorney Generals Fred Lamar and Lisa C. Glover, for the State.*

*Cunningham, Dedmond, Petersen & Smith, LLP, by F. Marsh Smith, and Moser, Schmidly, Mason & Roose, LLP, by Stephen S. Schmidly, for defendants.*

EAGLES, Chief Judge.

The North Carolina Department of Transportation ("NCDOT") and Mack Blue, Brenda Blue, and Pierce Irby (collectively, "defendants") each appeal from the trial court's orders denying NCDOT's motion to strike defendants' second defense, granting NCDOT's motion to dismiss defendants' counterclaims, granting defendants' motion to consolidate cases for purposes of discovery and G.S. § 136-108 hearing, denying defendants' motion to join necessary parties, allowing in part defendants' motion to modify the trial court's previous order, and allowing defendants' motion to certify this matter for immediate appeal pursuant to Rule 54. After a careful review of the record, briefs, and arguments of counsel, we affirm.

NCDOT has a program for improving transportation, which includes enlarging and constructing highways, known as the Transportation Improvement Program ("TIP"). *See* G.S. § 143B-350(f)(4). One TIP project, designated TIP R-210, was a transportation project intended to improve portions of United States Highway 1 from south of State Road 1853 near Lakeview, North Carolina, to State Road 1180 near Sanford, North Carolina. Planning for TIP R-210 began in 1989, and funding for the project was to be provided by the State. Throughout the planning process, NCDOT held public hearings and accepted public input on TIP R-210.

In 1991, NCDOT prepared and published a Draft Environmental Impact Statement ("DEIS") evaluating the environmental impact of various alternative routes for TIP R-210. Thereafter, on 22 April 1992, NCDOT issued a news release announcing its selection of the route designated "Alternative A" for TIP R-210. Then, on 1 December 1995, NCDOT prepared and published a Final Environmental Impact Statement ("FEIS"), as required by the North Carolina Environmental Policy Act ("NCEPA"), G.S. § 113A-1 *et seq.*, approving the selection of "Alternative A." Ultimately, on 21 March 1996, the U.S. Federal Highway Administration ("FHWA") approved NCDOT's selection of "Alternative A" as the "environmentally preferred alternative"

and issued a Record of Decision ("ROD") affirming its approval on that date.

Defendants each owned property located within the right-of-way of "Alternative A." After the selection of "Alternative A," NCDOT entered into negotiations with each defendant in an attempt to agree upon acceptable purchase prices for their parcels of land. After these negotiations failed, NCDOT filed separate condemnation actions against each defendant on 26 July 1999. On 26 October 1999, defendant Irby filed his answer and counterclaim, and thereafter, on 23 November 1999, defendants Mack and Brenda Blue filed their answers and counterclaims. In their answers and counterclaims, defendants alleged as a defense that NCDOT "engaged in arbitrary and capricious agency action and [] abused its agency discretion" ("defendants' second defense") and as a counterclaim that NCDOT violated NCEPA and the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, by preparing an inadequate FEIS, *inter alia*.

Defendants filed a motion to consolidate these cases for purposes of discovery and hearings. Subsequently, NCDOT filed motions to dismiss defendants' counterclaims pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) and motions to strike defendants' second defense pursuant to Rule 12(f). Defendants then filed a motion to join as necessary parties NCDOT Secretary David McCoy and NCDOT Project Development and Environmental Analysis Branch Manager William D. Gilmore. A hearing was held on all pending motions during the 28 February 2000 Civil Session of Moore County Superior Court, the Honorable Catherine C. Eagles presiding. By order entered 10 March 2000, the trial court denied NCDOT's motion to strike defendants' second defense, granted NCDOT's motion to dismiss defendants' counterclaims for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), granted defendants' motion to consolidate cases for purposes of discovery and G.S. § 136-108 hearing, and denied defendants' motion to join necessary parties. In response to the order, defendants filed a motion to modify order, or in the alternative, to certify this matter for immediate appeal pursuant to Rule 54. After a hearing on this motion, Judge Eagles entered a second order on 30 May 2000 making a minor modification to her previous order and certifying this matter for immediate appeal. NCDOT and defendants appeal.

[1] At the outset, we note that these appeals are interlocutory in nature. "An interlocutory order is one made during the pendency of

an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). Here, the trial court's orders did not dispose of the entire case; instead, the orders left pending NCDOT's condemnation actions against defendants. As further action by the trial court is pending to settle and determine the entire controversy, the trial court's orders are interlocutory.

"Generally, there is no right of immediate appeal from an interlocutory order." *Abe v. Westview Capital*, 130 N.C. App. 332, 334, 502 S.E.2d 879, 881 (1998). However, appeals from interlocutory orders raising issues of sovereign immunity affect a substantial right sufficient to warrant immediate appellate review. *See Price v. Davis*, 132 N.C. App. 556, 558-59, 512 S.E.2d 783, 785 (1999). Here, NCDOT asserts that the defense of sovereign immunity bars defendants' second defense and counterclaims. Accordingly, this appeal warrants immediate appellate review.

At the heart of both NCDOT's appeal and defendants' cross-appeal is the propriety of the trial court's treatment of defendants' second defense and defendants' counterclaims. First, we address the trial court's denial of NCDOT's motion to strike defendants' second defense pursuant to Rule 12(f). Next, we address the trial court's grant of NCDOT's motion to dismiss defendants' counterclaims for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

[2] As to the trial court's denial of NCDOT's motion to strike defendants' second defense, NCDOT argues that the trial court erred in denying the motion based on the doctrine of sovereign immunity. After careful review of this issue, we affirm the trial court.

Under Rule 12(f), the trial court "may order stricken from any pleading any insufficient defense or any redundant, irrelevant, immaterial, impertinent, or scandalous matter." G.S. § 1A-1, Rule 12(f). A motion under Rule 12(f) is a device to test the legal sufficiency of an affirmative defense. *See Trust Co. v. Akelaitis*, 25 N.C. App. 522, 525, 214 S.E.2d 281, 284 (1975). "If there is any question as to whether an issue may arise, the motion [under Rule 12(f)] should be denied." *Shellhorn v. Brad Ragan, Inc.*, 38 N.C. App. 310, 316, 248 S.E.2d 103, 108 (1978).

Defendants' second defense alleges that NCDOT engaged in arbitrary and capricious conduct and abused its agency discretion. In

condemnation proceedings, "[e]ach owner is entitled to defend upon the ground his property does not qualify for the purpose intended, or that its selection was the result of arbitrary or capricious conduct on the part of the taking agency." *Redevelopment Commission v. Hagins*, 258 N.C. 220, 225, 128 S.E.2d 391, 395 (1962).

Nevertheless, NCDOT asserts the defense of sovereign immunity. "Sovereign immunity is a theory or defense established to protect a sovereign or state as well as its officials and agents from suit in certain instances." *Vest v. Easley*, 145 N.C. App. 70, 73, 549 S.E.2d 568, 572 (2001). Under the doctrine of sovereign immunity, "[t]he State of North Carolina is immune from suit unless and until it expressly consents to be sued." *State v. Taylor*, 322 N.C. 433, 435, 368 S.E.2d 601, 602 (1988).

Here, NCDOT acquired title to defendants' land pursuant to G.S. § 136-19. Section 136-19 "empowers [NCDOT] to acquire title to land that it deems necessary for the construction or maintenance of roads." *Ferrell v. Dept. of Transportation*, 334 N.C. 650, 655, 435 S.E.2d 309, 313 (1993). "In enacting this statutory scheme, the legislature has implicitly waived [NCDOT's] sovereign immunity to the extent of the rights afforded in [G.S.] § 136-19 []." *Id.* Consequently, NCDOT may not avail itself of this defense here.

Additionally, we note that defendants further alleged as part of their second defense that NCDOT's conduct in condemning their land was arbitrary and capricious based in part on NCDOT's alleged violations of NCEPA and NEPA. Significantly, TIP R-210 is a state project. The project was to be constructed with North Carolina Highway Trust Funds, and, as defendants alleged, NCDOT "shifted funds so that [TIP R-210] will be built without federal funds."

"The requirements of NEPA are inapplicable to the state. NEPA has no application to a project unless [] the action is federal." *Buda v. Saxbe*, 406 F.Supp. 399, 402 (E.D. Tenn. 1974) (citations omitted). Moreover, "NEPA . . . by its express language operates only upon federal agencies, and imposes no duties on the States or on municipalities, except to the extent that a non-federal entity is found to be acting in partnership with the federal government." *Town of North Hempstead v. Village of North Hills*, 482 F.Supp. 900, 903 (E.D.N.Y. 1979) (citations omitted); *see also Ely v. Velde*, 451 F.2d 1130, 1139 (4th Cir. 1971).

The record reveals that some federal funds were spent on planning for TIP R-210; that NCDOT planned to build and design the proj-

ect to meet federal standards; and that NCDOT left open the option to later request federal funds for the project. However, "use of limited federal funding during the planning and design stage of a highway project does not constitute 'major federal action'" invoking NEPA. *Hawthorn Environmental Preserv. Ass'n v. Coleman*, 417 F.Supp. 1091, 1099 (N.D. Ga. 1976), *aff'd per curiam*, 551 F.2d 1055 (5th Cir. 1977). Furthermore, "early coordination or compliance with the eligibility requirements for federal funding, or designing a project so as to preserve the option of federal funding in the future, standing alone, will not convert a project into a 'major federal action'" within the purview of NEPA. *Southwest Williamson County Community v. Slater*, 67 F.Supp.2d 875, 884-85 (M.D. Tenn. 1999), *aff'd and remanded*, 243 F.3d 270 (6th Cir. 2001). Because no major federal action was involved in TIP R-210, we hold that NEPA was inapplicable to NCDOT, a state agency, in this project. Consequently, defendants are barred from raising alleged violations of NEPA in this action.

As for the alleged NCEPA violations, this Court has held that in condemnation proceedings, a landowner's failure to assert a violation of NCEPA as a defense in their answer constitutes a waiver. *See State v. Williams and Hessee*, 53 N.C. App. 674, 680-81, 281 S.E.2d 721, 726 (1981). Here, defendants raised the defense in their answer. Thus, defendants are not precluded by the doctrine of waiver from proceeding with their defense that NCDOT's alleged violations of NCEPA made the condemnation of their land arbitrary and capricious.

However, "[a]dministrative and judicial review of an environmental document is incidental to, and may only be undertaken in connection with, review of the agency action. *No other review* of an environmental document is allowed." G.S. § 113A-13 (emphasis added). Significant for purposes of this appeal is the fact that the environmental documents (the DEIS, the FEIS, and the ROD) were all prepared during NCDOT's planning and selection of "Alternative A" for TIP R-210. NCDOT's selection of "Alternative A" was separate and distinct from its action in condemning defendants' land, which is the basis of its complaint here. Pursuant to G.S. § 113A-13, these environmental documents may be reviewed only in connection with review of NCDOT's selection of "Alternative A" for TIP R-210—the agency action for which they were created, and not NCDOT's condemnation of defendants' land. Thus, while defendants are entitled to a review of whether NCDOT's condemnation action was arbitrary and capricious, defendants may not obtain judicial review of the

DEPARTMENT OF TRANSP. v. BLUE

[147 N.C. App. 596 (2001)]

environmental documents created during the planning and selection of "Alternative A" as part of the judicial review of the condemnation.

Accordingly, NCDOT is deemed to have waived its sovereign immunity in this condemnation action. Additionally, "allegations of arbitrary and capricious conduct or of abuse of discretion on the part of [NCDOT] render the issue subject to judicial review." *Dept. of Transportation v. Overton*, 111 N.C. App. 857, 859, 433 S.E.2d 471, 473 (1993). Nevertheless, defendants may not raise NEPA nor obtain judicial review of the environmental documents at issue as part of their defense in this action. Thus, we affirm that part of the trial court's order denying NCDOT's motion to strike defendants' second defense.

**[3]** Now, we turn to the trial court's grant of NCDOT's motion to dismiss defendants' counterclaims which allege violations of NCEPA and NEPA for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Defendants contend that the court erred in dismissing these counterclaims based on the North Carolina Administrative Procedure Act ("NCAPA"), G.S. § 150B-1 *et seq*. After careful review of this issue, we affirm.

When reviewing a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), a trial court may consider and weigh matters outside the pleadings. *See Smith v. Privette*, 128 N.C. App. 490, 493, 495 S.E.2d 395, 397 (1998). However, if the trial court confines its evaluation to the pleadings, the court must accept as true the plaintiff's allegations and construe them in the light most favorable to the plaintiff. *See id.* We note that this Court's review of an order granting a Rule 12(b)(1) motion to dismiss is *de novo*, "except to the extent the trial court resolves issues of fact and those findings are binding on the appellate court if supported by competent evidence in the record." *See id.*

Here, defendants attach their NCEPA and NEPA claims as counterclaims to NCDOT's condemnation actions. Through these counterclaims, defendants "challenge[] [NCDOT's] selecting [A]lternative A to build" TIP R-210 and allege that NCDOT violated both NCEPA and NEPA by preparing an inadequate FEIS, *inter alia*. The North Carolina Environmental Policy Act ("NCEPA"), G.S. § 113A-1 *et seq.*, sets forth our State's environmental policy. Likewise, the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, sets forth the environmental policy of our federal government. NCEPA

and NEPA are "[s]imilar." D. Mandelker, NEPA Law and Litigation § 12.02[1] (2nd ed. 2001).

"The primary purpose of both the state and federal environmental statutes is to ensure that government agencies seriously consider the environmental effects of each of the reasonable and realistic alternatives available to them." *Orange County v. Dept. of Transportation*, 46 N.C. App. 350, 383, 265 S.E.2d 890, 911 (1980). Both acts require that government agencies—in North Carolina, those state agencies planning to spend public money on governmental projects—must issue environmental impact statements ("EIS") to "provide a full and fair discussion of significant environmental impacts and [] inform decision-makers and the public of the reasonable alternatives which would avoid or minimize adverse impacts or enhance the quality of the environment." 1 N.C.A.C. § 25.0601; *see also* G.S. § 113A-4(2); 42 U.S.C. § 4332(C).

Notably, neither NCEPA nor NEPA contain explicit judicial review provisions. Nevertheless, federal courts "have long recognized that [they] have jurisdiction over NEPA challenges pursuant to the [federal] APA," 5 U.S.C. § 702. *Sierra Club v. Slater*, 120 F.3d 623, 630-31 (6th Cir. 1997); *see also Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 186 (4th Cir. 1999); *N.C. Alliance for Transp. Reform v. D.O.T.*, 151 F.Supp.2d 661, 678 (M.D.N.C. 2001). Likewise, this Court has adopted the view that judicial review of an alleged NCEPA violation is available under the NCAPA's judicial review provisions, particularly G.S. § 150B-43. *See Citizens Roadways v. Dept. of Transp.*, 145 N.C. App. 497, 550 S.E.2d 253 (2001); *Orange County*, 46 N.C. App. 350, 265 S.E.2d 890. Again, we note that since TIP R-210 was a state project, NEPA is inapplicable here. *See Buda v. Saxbe*, 406 F.Supp. 399, 402.

The NCAPA "establishes a uniform system of administrative rule making and adjudicatory procedures for agencies" and "applies to every agency" unless an agency is expressly exempted. G.S. § 150B-1(a) and (c). Under the administrative hearing provisions of the NCAPA,

> any dispute between an agency and another person that involves the person's rights, duties, or privileges . . . should be settled through informal procedures. . . . If the agency and the other person do not agree to a resolution of the dispute through informal procedures, either the agency or the person may commence an administrative proceeding to determine the person's rights,

duties, or privileges, at which time the dispute becomes a 'contested case.'

G.S. § 150B-22. The administrative hearing provisions of this act (G.S. §§ 150B-22 to 150B-42) apply to all agencies and all proceedings except those expressly exempted. *See Empire Power Co. v. N.C. Dept. of E.H.N.R.*, 337 N.C. 569, 586, 447 S.E.2d 768, 778 (1994). The General Assembly has expressly named the particular agencies exempted from the NCAPA and specified the extent of each such exemption. *See id.* at 587, 447 S.E.2d at 779.

" 'The Department of Transportation, except as provided in G.S. 136-29 (construction contract claims)' is expressly exempt from the contested case provisions." *Citizens Roadways*, 145 N.C. App. at 497, 499, 550 S.E.2d at 255 (quoting G.S. § 150B-1(e)(8)). Consequently, defendants "cannot petition for a hearing before the Office of Administrative Hearings ("OAH") in this case." *Id.* Nevertheless, judicial review of agency decisions in Superior Court, pursuant to G.S. § 150B-43, is proper in certain cases where no prior proceeding was held before the OAH. *See id.; see also Charlotte Truck Driver Training School v. N.C. DMV*, 95 N.C. App. 209, 212, 381 S.E.2d 861, 862-63 (1989); *Hedgepeth v. N.C. Div. of Servs. for the Blind*, 142 N.C. App. 338, 345, 543 S.E.2d 169, 173 (2001).

Section 150B-43 of the NCAPA provides aggrieved parties an avenue for judicial review of adverse agency determinations. Before seeking review of an adverse agency determination under § 150B-43, a party must satisfy five requirements: "(1) the person must be aggrieved; (2) there must be a contested case; (3) there must be a final agency decision; (4) administrative remedies must be exhausted; and (5) no other adequate procedure for judicial review can be provided by another statute." *Huang v. N.C. State University*, 107 N.C. App. 710, 713, 421 S.E.2d 812, 814 (1992).

First, " '[p]erson aggrieved' means any person or group of persons of common interest directly or indirectly affected substantially in his or its person, property, or employment by an administrative decision." G.S. § 150B-2(6). Clearly, defendants are "aggrieved" because (1) they own land within the proposed route for "Alternative A" for TIP R-210, (2) they "asserted their position as taxpayers," and (3) they share a sufficient geographical nexus to "Alternative A" for TIP R-210 so that they may be expected to suffer whatever adverse environmental effects TIP R-210 may have. *See Orange County*, 46 N.C. App. 350, 360-62, 265 S.E.2d 890, 899.

Second, a contested case is "(1) an agency proceeding, (2) that determines the rights of a party or parties." *Lloyd v. Babb*, 296 N.C. 416, 424-25, 251 S.E.2d 843, 850 (1979). NCEPA broadens "the definition of 'contested case' and expand[s] the scope of procedural remedies available under [the NCAPA], including the right to judicial review" provided in G.S. § 150B-43. *Orange County*, 46 N.C. App. at 375, 265 S.E.2d at 907. When violations of NCEPA are alleged, NCDOT's decision concerning location of a highway gives rise to a contested case under the NCAPA. *See id.* at 374-76, 265 S.E.2d at 906-07. Here, defendants, as aggrieved parties, alleged that NCDOT violated NCEPA in the process of selecting the "Alternative A" location for TIP R-210. Consequently, based on our precedent in *Orange County*, defendants have a contested case.

We note that since we decided *Orange County* in 1980, the General Assembly has exempted NCDOT from the contested case provisions of the NCAPA, except as provided in G.S. § 136-29. *See* 1991 N.C. Sess. Laws ch. 418, § 2; G.S. § 150B-1(e)(8). Nonetheless, a contested case hearing, from which NCDOT is expressly exempt, "is distinguishable from a contested case." *Community Psychiatric Ctrs. v. N.C. Dept. of Human Resources*, 103 N.C. App. 514, 515, 405 S.E.2d 769, 770 (1991). A contested case

> extends beyond an adjudicatory hearing to include "any agency proceeding, by whatever name called, wherein the legal rights, duties and privileges of a party are required by law to be determined by an agency after an opportunity for an adjudicatory hearing."

*Id.* (quoting *Charlotte-Mecklenburg Hosp. Authority v. N.C. Dept. of Human Resources*, 83 N.C. App. 122, 124, 349 S.E.2d 291, 292 (1986)). Defendants did not have an adjudicatory hearing before NCDOT here; however, NCDOT did hold public hearings on TIP R-210. Nevertheless, NCDOT's exemption from the contested case provisions of the NCAPA does not affect the fact that defendants have a "contested case" for purposes of satisfying *Huang v. N.C. State University*, 107 N.C. App. 710, 421 S.E.2d 812.

Third, in determining whether a particular agency action is final, "[t]he core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Franklin v. Massachusetts*, 505 U.S. 788, 797, 120 L. Ed. 2d 636, 648 (1992) (U.S. Supreme Court analyzing final agency action under the federal APA and 5 U.S.C. § 704).

We note that TIP R-210 was a *state* project to be constructed with North Carolina Highway Trust Funds. In a case where only state highway funds are involved,

> an action to challenge the sufficiency of the environmental impact statement would be ripe when the Board of Transportation approved the location of the highway corridor following the preparation of a final environmental impact statement [FEIS].

*Orange County*, 46 N.C. App. at 367, 265 S.E.2d at 903. Here, NCDOT approved the location of "Alternative A" for TIP R-210 and published a FEIS on 1 December 1995. At this point, NCDOT had completed the decision making process and the result directly affected the parties. As such, NCDOT's action was sufficiently final when it issued the FEIS on 1 December 1995. *See Warren County v. State of N.C.*, 528 F.Supp. 276, 284 (E.D.N.C. 1981) (issuance of EIS was final agency determination).

We recognize that there is a disagreement between the parties as to whether the ROD constituted NCDOT's final agency decision in the case before us. "[I]t appears well-established that a [FEIS] or the ROD issued thereon constitute the 'final agency action'. . . ." *Sierra Club*, 120 F.3d 623, 631. "Final agency action" refers to the issuance of a "final agency decision." *See Howell v. Morton*, 131 N.C. App. 626, 634, 508 S.E.2d 804, 809 (1998). Under the Federal-Aid Highways Act ("FAHA"), 23 U.S.C. § 101 *et seq.*, FHWA has final approval authority over a state agency's FEIS, and FHWA memorializes approval of that FEIS and project location by issuing a ROD. *See Jersey Heights Neighborhood Ass'n*, 174 F.3d 180, 184. However, "[a]pproval of the [FEIS] is not a[] [FHWA] Action . . . and does not commit the [FHWA] to approve any future grant request to fund the preferred alternative." 23 C.F.R. § 771.125 (e); *see also* 23 C.F.R. § 771.113 (b). Here, NCDOT submitted the FEIS to FHWA for location approval to preserve the State's option of obtaining federal funding in the future. FHWA's subsequent issuance of the ROD did not change the nature of TIP R-210, a state project, into a federal project. Accordingly, for purposes of this appeal, we hold that the FEIS, not the ROD, was NCDOT's final agency decision.

Fourth, "as a general rule a party must exhaust all applicable administrative remedies before filing in the superior court." *Jackson v. Dept. of Administration*, 127 N.C. App. 434, 436, 490 S.E.2d 248, 249 (1997). NCEPA has no language providing a party with a right to

challenge a FEIS. However, the parties have at least two administrative remedies available. *See Orange County*, 46 N.C. App. at 376-77, 265 S.E.2d at 907-08 (one available administrative remedy, 1 N.C.A.C. § 25.0106 (the right to petition the Governor), cited in *Orange County* has since been repealed).

For instance, citizens have the opportunity to participate "in the agency's decision making process" by filing comments, requesting a public hearing, and speaking at the public hearing. *See Empire Power Co. v. N.C. Dept. of E.H.N.R.*, 112 N.C. App. 566, 572-73, 436 S.E.2d 594, 599 (1993), *rev'd on other grounds*, 337 N.C. 569, 447 S.E.2d 768 (1994); *see also* 1 N.C.A.C. § 25.0604 (Public Hearing). Here, defendants had the opportunity to participate in NCDOT's decision making process. The record reflects that many citizens did participate by filing comments and speaking at NCDOT hearings. However, the record is unclear as to whether these defendants actually participated; although, the record does show that defense counsel did actively participate.

Additionally, G.S. § 136-62 provides that "[t]he citizens of th[is] State shall have the right to present petitions to the board of county commissioners, and through the board to [NCDOT], concerning additions to the system and improvement of roads." While the record is not clear as to whom the petition was presented, the record does reflect that a citizens' petition in opposition to "Alternative A" for TIP R-210 was before NCDOT. Accordingly, we hold that the available administrative remedies were exhausted here.

Finally, no other adequate procedure for judicial review of defendants' NCEPA challenge was provided by any other statute. Defendants contend that G.S. § 136-108 provides an adequate procedure for judicial review of their counterclaims. Section 136-108 provides that in condemnation proceedings, the trial court may hold a hearing to "determine any and all issues raised by the pleadings other than the issue of damages . . . ." Defendants contend that their NCEPA challenge is an issue that may be heard and determined in such a hearing. However, the environmental documents at issue were prepared for the administrative process by which NCDOT selected "Alternative A" for TIP R-210, not for the condemnation proceeding. Because review of an environmental document may be undertaken only in connection with review of the agency action for which the document was prepared, *see* G.S. § 113A-13 and 1 N.C.A.C. § 25.0605(f), section 136-108 does not provide an adequate pro-

cedure for judicial review of defendants' NCEPA challenge. The NCAPA does provide for judicial review.

In sum, defendants have satisfied the five requirements for judicial review of an adverse agency determination under G.S. § 150B-43. Pursuant to G.S. § 150B-45,

> [t]o obtain judicial review of a final decision under this Article, the person seeking review must file a petition in the Superior Court of Wake County or in the superior court of the county where the person resides.

> The person seeking review must file the petition within 30 days after the person is served with a written copy of the decision. A person who fails to file a petition within the required time waives the right to judicial review under this Article.

Defendants failed to file a petition with the superior court within thirty days of NCDOT's publication of the FEIS on 1 December 1995. In fact, defendants did not file any claim with the superior court until they filed their counterclaims in 1999—over three years after NCDOT's publication of the FEIS.

We hold that defendants' contention that they were not properly served with a written copy of NCDOT's decision is unavailing. The regulations under NCEPA allow for notice of a FEIS by publication. *See* 1 N.C.A.C. § 25.0605(c) ("Notice shall also be given in the Environmental Bulletin," which is published bi-monthly by the Department of Administration's State Clearinghouse); 1 N.C.A.C. § 25.0212. The record shows that NCDOT issued a news release announcing the selection of "Alternative A" for TIP R-210. This news release was followed by NCDOT's publication of the FEIS on 1 December 1995. Unlike defendants' contentions concerning notice and service of the ROD, defendants do not raise any notice challenges regarding the FEIS. Accordingly, we hold that the record supports the conclusion that defendants knew or should have known of NCDOT's action by 1 December 1995.

Defendants' failure to timely comply with the NCAPA's judicial review requirements is sufficient basis to affirm the trial court's dismissal of their counterclaims. *See Citizens Roadways*, 145 N.C. App. 497, 550 S.E.2d 253 (affirming trial court's dismissal of complaint against NCDOT alleging violations of NCEPA filed over thirty days after NCDOT's issuance of a Finding of No Significant Impact ("FONSI")). Accordingly, we affirm that part of the trial court's order

dismissing defendants' counterclaims for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

Having carefully reviewed the remainder of the issues addressed by NCDOT and defendants in their briefs, we conclude that the trial court did not err. Therefore, we affirm the remainder of the trial court's orders.

Affirmed.

Judges TIMMONS-GOODSON and THOMAS concur.