Monarch Tax Credits, LLC v. N.C. Dep't of Revenue, 2021 NCBC 6.

STATE OF NORTH CAROLINA
WAKE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 12647

MONARCH TAX CREDITS, LLC,
formerly known as STATE TAX
CREDIT EXCHANGE, LLC,

       Plaintiff-Petitioner,

       v.

NORTH CAROLINA DEPARTMENT
OF REVENUE and RONALD G.
PENNY, SECRETARY, in his official
capacity,

       Defendants-Respondents.

**ORDER AND OPINION ON
DEFENDANTS' MOTION TO DISMISS**

1. THIS MATTER is before the Court on Defendants North Carolina Department of Revenue ("NCDOR" or the "Department") and Ronald G. Penny's (collectively "Defendants") Motion to Dismiss (the "Motion") seeking to dismiss the Petition for Judicial Review and Complaint for Declaratory Relief and Damages Arising From Constitutional Violations (the "Petition") filed by Plaintiff Monarch Tax Credits, formerly known as State Tax Credit Exchange, LLC ("Monarch").

2. The Motion presents challenges both to the Court's jurisdiction pursuant to Rules 12(b)(1) and 12(b)(2) of the North Carolina Rules of Civil Procedure ("Rules") and to the merits of the Petition pursuant to Rule 12(b)(6). This Order and Opinion addresses only the Department's jurisdictional challenges, deferring consideration of the merits. The Court, having considered the Motion, materials of record, briefs, and arguments of counsel, for the reasons stated below, concludes that

it has jurisdiction and DENIES the Motion to the extent it is brought pursuant to Rule 12(b)(1) or Rule 12(b)(2).

> *Kilpatrick Townsend & Stockton LLP, by Joseph S. Dowdy and Phillip A. Harris, Jr., and Nelson Mullins Riley & Scarborough LLP, by Reed J. Hollander and D. Martin Warf, for Plaintiff-Petitioner Monarch Tax Credits, LLC.*
>
> *North Carolina Department of Justice, by Terence D. Friedman, David D. Lennon, and Matthew H. Sommer, for Defendants-Respondents North Carolina Department of Revenue and Ronald G. Penny, Secretary in his official capacity.*

Gale, Senior Judge.

## I. INTRODUCTION

3. Monarch claims that it has suffered damages because the Department has unconstitutionally administered North Carolina tax law in a manner that has caused Monarch business damages and has denied North Carolina taxpayers, including but not limited to Monarch customers, investment tax credits to which they are entitled.

4. Monarch formed structured investment partnerships to encourage investment by North Carolina taxpayers related to renewable energy, mill restoration, and historic redevelopment. Its business model contemplates using these partnerships to aggregate investments necessary to fund such projects, and to then allocate to investors the tax credits those projects yield, thereby achieving the opportunities and benefits North Carolina's legislative acts were intended to promote.

5. Monarch has not itself claimed any of the relevant investment tax credits against its own North Carolina tax liability. It, then, has not pursued the

traditional statutory administrative remedies provided to taxpayers who challenge the imposition of an income tax or penalty. Rather, Monarch contends that it is entitled to proceed directly in this Court for either of two reasons. First, Monarch contends that the damage it has suffered flows from the Department's enforcement of its September 10, 2018 publication of an Important Notice: Tax Credits Involving Partnerships (the "Notice"), which constitutes a Rule[1] as to which Monarch is entitled to have the Department issue an administrative declaration ruling as to its validity, and that the Department's refusal to consider or issue such a declaration constitutes a final denial subject to immediate judicial review. As to this ground, the Department contends that neither was the Notice a Rule nor is Monarch a party aggrieved by the application of a Rule. Second, Monarch contends that it is otherwise entitled to pursue a direct constitutional claim for the damage it has suffered unaffected by any invocation of sovereign immunity, otherwise known as a *Corum* claim.[2] The Department contends that the *Corum* claim cannot proceed, first, because Monarch does not have standing to present it and, second, because Monarch has an available administrative remedy as a North Carolina taxpayer which it has chosen not to pursue. Monarch responds that the Department invokes only an administrative remedy that is theoretical and impractical at best and that should not bar the *Corum* claim, which it has standing to pursue.

---

[1] N.C.G.S. § 150B-4 allows challenges to administrative rules. Monarch claims the Notice is a Rule. The Department claims it is not.

[2] *See Corum v. Univ. of N.C.*, 330 N.C. 761, 413 S.E.2d 276 (1992).

6.    The parties have presented extensive arguments as to the underlying merits of the manner in which the Department has administered the relevant incentive tax program.  Those merits, at least in part, are now before the Court in a separate proceeding arising from a taxpayer appeal, *N.C. Farm Bureau Mut. Ins. v. N.C. Dep't of Revenue*, No. 2020-CVS-10244 (Wake County), with a suggestion that there are several other such appeals that may follow.

7.    After consideration of the pleadings, briefs, arguments of counsel, and related authorities, the Court concludes first that Monarch is not entitled to seek an administrative declaration pursuant to N.C.G.S. § 150B-4 ("Section 150B-4"), and therefore the matter is not properly before the Court for judicial review on that basis. The Court further concludes that Monarch does not have an available adequate remedy as a North Carolina taxpayer pursuant to N.C.G.S. § 105-241.19 ("Section 105-241.19") and therefore has standing to allege, and has adequately alleged, its *Corum* claim.   Again, the Court defers for later determination any merits determination and whether those merits should be addressed either separately or in combination with issues that may be presented in related proceedings.

## II.    PROCEDURAL HISTORY

8.    Following informal meetings, on August 1, 2019 Monarch, pursuant to Section 150B-4, requested that NCDOR issue a declaratory ruling that the Notice is an unconstitutional Rule.  NCDOR responded on August 29, 2019 that it was not required to issue such a declaratory ruling without otherwise addressing Monarch's legal claims.  (Petition ¶¶ 101–05, ECF No. 2.)

9. Monarch filed its Petition on September 26, 2019. The Petition includes four counts: the first count seeking judicial review of NCDOR's refusal to issue a declaratory ruling when requested, (Petition ¶¶ 113–20); the second count seeking a declaration that the refusal was a wrongful denial on the merits, (Petition ¶¶ 121–30); the third count seeking a declaratory judgment that NCDOR has acted unconstitutionally, (Petition ¶¶ 131–42); and the fourth count seeking damages caused by NCDOR's alleged constitutional violations, (Petition ¶¶ 143–49).

10. Monarch filed its Notice of Designation as a Complex Business Case or, in the Alternative, Motion for Designation as an Exceptional/Complex Business Case on September 29, 2019. (ECF No. 3.) The case was designated as a Complex Business Case and assigned to the undersigned on the same day. (ECF No. 1.)

11. Defendants filed their Motion on December 2, 2019. (ECF No. 14.)

12. The Motion was fully briefed, (ECF Nos. 15, 20, 21), including the submission of supplemental authorities, (ECF Nos. 22–24). The Court then heard oral argument on March 5, 2020.

13. On March 24, 2020, a number of insurers jointly requested leave to file a brief as amici. (ECF Nos. 25–26.) NCDOR filed a response which did not oppose the filing of the brief but also presented arguments which raised new positions in support of the Department's Motion to dismiss the Petition, particularly its contention that Monarch has an available administrative remedy pursuant to Section 105-241.19. (ECF No. 27.) The Court allowed the amici brief to be filed of record and then granted the parties' requests for leave to submit additional briefing related to

the issue of whether Monarch has such an administrative remedy. Those supplemental briefs have been filed. (ECF Nos. 38–43.)

14. The Motion is ripe for ruling.

### III.   FACTUAL BACKGROUND

15. The Court recites only facts relevant to the challenge to Monarch's standing or the Court's jurisdiction. While the Court may consider matters beyond the pleadings to resolve those challenges, affidavits and documentary materials submitted by the parties primarily address the merits of the Petition and are therefore largely not relevant to the Court's consideration of the personal and subject matter jurisdictional issues.

16. North Carolina enacted tax credit programs to encourage investment in renewable energy, historic property renovation, and mill restoration. *See, e.g.*, N.C.G.S. § 105-129.16A, -129.35–39, -129.70–75A, -129.105–110. Certain credits have now expired, and others may soon expire. (Petition ¶¶ 38, 41, 43.)

17. Monarch is a limited liability company organized and maintaining its principal place of business in Georgia, but also maintaining an office and employees in North Carolina. (Petition ¶ 11.)

18. Monarch developed certain structures designed to aggregate investments from North Carolina taxpayers, which were used to construct projects that would yield tax credits. (Petition ¶ 54.) Monarch established partnerships including an "Annual Fund-Master Fund Structure," pursuant to which a Master Fund would fund a project and initially receive tax credits for the life of a project,

referred to as the "Credit Period," and separate Annual Funds would be created for each of the years within the Credit Period to which the Master Fund would assign tax credits on a particular year. The Annual Fund would allocate those credits to investors in the Annual Fund. (Petition ¶¶ 56, 60.)

19. These various partnerships were organized under Georgia law. Some or all of the funds have filed North Carolina partnership returns but generally Monarch does not have North Carolina taxable income and has not utilized the credits against its own tax liability. (Petition ¶ 62.)

20. Monarch avers that its programs have facilitated millions of dollars of investments in renewable energy, and historic and mill redevelopment projects. (Petition ¶¶ 68, 75.) It contends that it has aggregated other tax credits which it cannot effectively transfer to investors, rendering Monarch's business plan impossible to carry out and the tax credits it has aggregated essentially worthless. (Petition ¶ 94.)

21. Monarch avers that NCDOR has acted contrary to the legislative purpose and intent of the tax incentive program, has undertaken efforts to deprive Monarch's customers of the benefits of the tax credit programs, depriving the North Carolina public from the benefit of projects that would be supported by the investments, and in doing so has acted unconstitutionally and beyond the bounds of its statutory power. Monarch contends that examples of NCDOR's unlawful enforcement scheme include an aggressive audit program beginning in January 2018 involving all or nearly all of Monarch's customers, (Petition ¶ 79), and NCDOR's

issuing the Notice on September 10, 2018 for the purpose of discouraging investments, (Petition ¶ 82, Ex. 2). Among other legal arguments, Monarch claims and NCDOR denies that NCDOR has, without legislative authority to do so, sought to apply provisions of the United States Tax Code in order to characterize the exchange between Monarch and its customers as a "disguised sale" rather than an allocation of a partnership interest, thereby defeating the investors' right to claim the credits. (Petition ¶¶ 78–94, 118, 132–37.)

22.     On August 1, 2019, pursuant to Section 150B-4, Monarch requested that NCDOR issue a declaratory ruling on eleven points, including that the Notice was an illegal "Rule," that NCDOR had exceeded its authority, and that Monarch's customers are entitled to their allocated tax credits. (Petition ¶¶ 95–104, Ex. 3.)

23.     On August 19, 2019, NCDOR responded by letter, stating that Section 105-241.19 is the exclusive remedy for disputing the denial of tax refunds and prohibits NCDOR from issuing the requested declaratory ruling except to taxpayers against whom a tax liability has been assessed, and that Monarch does not have standing to seek a declaratory ruling pursuant to Section 150B-4. (Petition ¶ 105, Ex. 4.) Monarch contends that its injury cannot be redressed by the administrative remedies of Chapter 105, and that it is entitled to pursue a direct claim for constitutional violations before this Court because it has no other adequate remedy at law. (Petition ¶¶ 140, 144.)

24. Through its Motion, the Department asserts that Monarch lacks standing and that its claims are barred by sovereign immunity. Those assertions present issues of both personal and subject matter jurisdiction.

## IV. STANDARD OF REVIEW

### A. Subject Matter Jurisdiction Under Rule 12(b)(1)

25. The Motion asserts that Monarch does not have standing. "Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction," *Street v. Smart Corp.*, 157 N.C. App. 303, 305, 578 S.E.2d 695, 698 (2003) (internal quotation marks omitted), and "must be addressed, and found to exist, before the merits of [the] case are judicially resolved[,]" *In re T.B.*, 200 N.C. App. 739, 742, 685 S.E.2d 529, 531–32 (2009) (internal quotation marks omitted).

26. "A plaintiff's standing to assert its claims may be challenged under either Rule 12(b)(1) or Rule 12(b)(6) of the North Carolina Rules of Civil Procedure." *Raja v. Patel*, 2017 NCBC LEXIS 25, at *11 (N.C. Super. Ct. Mar. 23, 2017). A Rule 12(b)(1) motion to dismiss attacks a court's "jurisdiction over the subject matter" of the plaintiff's claims. N.C. R. Civ. P. 12(b)(1). "Subject matter jurisdiction is a prerequisite for the exercise of judicial authority over any case or controversy[,]" *Hardy v. Beaufort Cty. Bd. of Educ.*, 200 N.C. App. 403, 408, 683 S.E.2d 774, 778 (2009) (citing *Harris v. Pembaur*, 84 N.C. App. 666, 667–68, 353 S.E.2d 673, 675 (1987)), and "has been defined as 'the power to hear and to determine a legal controversy; to inquire into the facts, apply the law, and to render and enforce a judgment,' " *High v. Pearce*, 220 N.C. 266, 271, 17 S.E.2d 108, 112 (1941). "[T]he

proceedings of a court without jurisdiction of the subject matter are a nullity." *Burgess v. Gibbs*, 262 N.C. 462, 465, 137 S.E.2d 806, 808 (1964) (citing *High*, 220 N.C. at 271, 17 S.E.2d at 112).

27. The plaintiff bears the burden of establishing subject matter jurisdiction. *Harper v. City of Asheville*, 160 N.C. App. 209, 217, 585 S.E.2d 240, 245 (2003). "On a motion to dismiss under Rule 12(b)(1), the Court 'may consider and weigh matters outside the pleadings.'" *Sykes v. Health Network Sols., Inc.*, 2017 NCBC LEXIS 73, at *47–48 (N.C. Super. Ct. Aug. 18, 2017) (quoting *Dep't of Transp. v. Blue*, 147 N.C. App. 596, 603, 556 S.E.2d 609, 617 (2001)). "If the Court 'confines its evaluation to the pleadings,' however, it 'must accept as true the plaintiff's allegations and construe them in the light most favorable to the plaintiff.'" *Id.* (quoting *Blue*, 147 N.C. App. at 603, 556 S.E.2d at 617).

### B.    Personal Jurisdiction Under Rule 12(b)(2)

28. Defendants have asserted sovereign immunity, which can be properly addressed as a challenge to personal jurisdiction under Rule 12(b)(2). *Hawkins v. State*, 117 N.C. App. 615, 622, 453 S.E.2d 233, 237 (1995) ("the doctrine of sovereign immunity presents a personal jurisdiction question"); *see also Parker v. Town of Erwin*, 243 N.C. App. 84, 95, 776 S.E.2d 710, 720 (2015).

29. "The standard of review in deciding a 12(b)(2) motion depends upon the procedural posture of the matter, and the parties are permitted to submit evidence and affidavits in support of their jurisdictional arguments." *N.C. Acupuncture Licensing Bd. v. N.C. Bd. of Physical Therapy Examiners*, 2016 NCBC LEXIS 33, at

\*9 (N.C. Super. Ct. Apr. 26, 2016). Where "the defendant submits affidavits or other supporting evidence with its 12(b)(2) motion, the allegations in the complaint can no longer be taken as true and the plaintiff cannot rest on the complaint's allegations." *Id.*

30.     Under the sovereign immunity doctrine, "[t]he State is immune from suit unless and until it has expressly consented to be sued." *Great Am. Ins. Co. v. Gold*, 254 N.C. 168, 173, 118 S.E.2d 792, 795 (1961). "As a general rule, the doctrine of governmental, or sovereign immunity bars actions against, *inter alia*, the state, its counties, and its public officials sued in their official capacity." *Richmond Cty. Bd. of Educ. v. Cowell*, 225 N.C. App. 583, 587, 739 S.E.2d 566, 569 (2013). "Thus, 'a state may not be sued . . . unless it has consented by statute to be sued or has otherwise waived its immunity from suit.'" *Id.* (citation omitted). "[A] statutory waiver of sovereign immunity must be strictly construed." *Meyer v. Walls*, 347 N.C. 97, 107, 489 S.E.2d 880, 885–86 (1997) (holding that "the Tort Claims Act applies only to actions against state departments, institutions, and agencies and does not apply to claims against officers, employees, involuntary servants, and agents of the State"). Furthermore, where the legislature has allowed "for an action against the State, the procedure prescribed by statute must be followed, and the remedies thus afforded are exclusive. The right to sue the State is a conditional right, and the terms prescribed by the Legislature are conditions precedent to the institution of the action." *Great Am. Ins. Co.*, 254 N.C. at 173, 118 S.E.2d at 795.

31.     However, because "the doctrine of sovereign immunity is not a constitutional right . . . [but is rather] a common law theory or defense established by [our] [c]ourt[s,]" "when there is a clash between these constitutional rights and sovereign immunity, the constitutional rights must prevail." *Corum*, 330 N.C. at 786, 413 S.E.2d at 291–92; *see also Richmond Cty. Bd. of Educ.*, 225 N.C. App. at 587–91, 739 S.E.2d at 569–72 (holding that common law waiver of sovereign immunity is not limited to claim brought under Article I of the North Carolina Constitution).

## V.     ANALYSIS

### A.     Monarch Does Not Have Standing Pursuant to Section 150B-4

32.     The Rule 12(b)(1) Motion in part turns on whether Monarch has standing to request and then seek judicial review of a declaratory ruling pursuant to Section 150B-4. That requires the Court to examine the interplay between Section 150B-4 and Section 105-241.19.

33.     In material part, Section 150B-4(a) provides that "[o]n request of a person aggrieved, an agency shall issue a declaratory ruling as to the validity of a rule or as to the applicability to a given state of facts of a statute administered by the agency or of a rule or order of the agency." Here, Monarch invokes Section 150B-4 to challenge the Department's refusal to allow tax credits to North Carolina taxpayers who are Monarch customers.

34.     Section 105-241.19 reads as follows:

> The remedies in [N.C.]G.S. 105-241.11 through [N.C.]G.S. 105-241.18 set out the exclusive remedies for disputing the denial of a requested refund, a taxpayer's liability for a tax, or the constitutionality of a tax statute. Any other action is barred. Neither an action for declaratory

judgment, an action for an injunction to prevent the collection of a tax, nor any other action is allowed.

35.    Neither Section 105-241.19 nor Section 150B-4 references the other.

36.    The administrative procedure afforded by Section 105-241.19 includes proceedings by which a taxpayer may challenge a denial of a refund or a tax assessment.  Monarch contends that Section 105-241.19 should be read narrowly to limit only other actions sought by taxpayers entitled to pursue remedies under it and should not be read more broadly to restrict any challenge to the Department's tax enforcement by one damaged by that enforcement in a capacity other than as a taxpayer.  The Department contends that Section 105-241.19 clearly limits all challenges to the Department's grant or refusal of tax refunds to proceedings under that section.

37.    A person seeking relief under Section 150B-4 must first be a "person aggrieved."  The declaratory ruling sought must relate to a subject matter within the intended scope of Section 150B-4.  The Department argues that Monarch is not a "person aggrieved" because it has not suffered direct effect from the Department's action but rather indirect injuries derivative of the loss of tax credits by Monarch customers, and that the loss of those credits is clearly within the ambit of Section 105-241.19 which is the exclusive remedy for taxpayers.  Monarch claims that it additionally asserts its own direct injury suffered by its inability to continue its business model or to sell tax credits it has already aggregated.

38.    The term "person aggrieved" has been defined broadly in other contexts to include "any person . . . directly or indirectly affected substantially in his or its

person, property, or employment by an administrative decision." N.C.G.S. § 150B-2(7). The definition has been liberally construed, and the dividing line as to when a person or entity has suffered sufficient effect to have standing is not a bright one. *Compare Empire Power Co. v. N.C. DEHNR,* 112 N.C. App. 566, 436 S.E.2d 594 (1993), *rev'd on other grounds,* 377 N.C. 569, 447 S.E.2d 768, *reh'g denied,* 338 N.C. 314, 451 S.E.2d 634 (1994) (recognizing standing for an adjacent landowner affected by agency's permit decision), *with Diggs v. NCHHS,* 157 N.C. App. 334, 578 S.E.2d 666 (2003) (no standing based on potential rather than actual harm).

39. As discussed in greater detail below when addressing Monarch's *Corum* claim, the constitutionality of a statute is generally a matter for a court rather than an administrative resolution, particularly when the constitutional challenge is a facial one. *See Matter of Redmond by & through Nichols*, 369 N.C. 490, 493, 797 S.E.2d 275, 277 (2017). Accordingly, where a challenge is limited to a constitutional one, the administrative remedy is not generally considered a predicate to be exhausted before pursuit of a court challenge. *Shell Island Homeowners Ass'n, Inc. v. Tomlinson*, 134 N.C. App. 217, 224, 517 S.E.2d 406, 412 (1999). By statute, the converse is true where a taxpayer challenges as unconstitutional the application of a tax statute to his own liability. In that instance, an administrative remedy must first be pursued even if the constitutional challenge is the sole issue, and the administrative law judge is required to dismiss the contested case for lack of jurisdiction before a judicial challenge is ripe. N.C.G.S. § 105-241.17. The general rule is that failure to pursue an effective administrative remedy may bar a

constitutional attack against a state agency where that administrative remedy would have allowed the claimant to vindicate the same interest without reaching a facial constitutional challenge. *Alt v. Parker*, 112 N.C. App. 307, 318, 435 S.E.2d 773, 779 (1993).

40. Monarch is correct that Section 105-241.19 does not directly reference Section 150B-4. However, the Court concludes that the legislative purpose inherent in Section 105-241.19 is that any administrative challenge to the Department's administrative tax policy that implicates a taxpayer's right to refunds should not proceed outside of Section 105-241.19, whether brought directly by the taxpayer or someone else on their behalf or viewed through the lens of the right of taxpayers.

41. As a result, the Court concludes that the legislature did not intend that Section 150B-4 provide a secondary administrative remedy to challenge the Department's implementation of tax policy resulting in the loss of tax credits when the challenge is not brought directly by the taxpayer. Accordingly, the Court concludes that Monarch does not have standing to pursue its claim pursuant to Section 150B-4.

42. It necessarily follows that a remedy under Section 150B-4 does not constitute an adequate remedy that would bar an otherwise valid *Corum* claim. The Court then must separately consider whether Monarch has an available administrative remedy under Section 105-241.19 which it chose not to pursue in favor of its direct *Corum* claim.

**B.** **Monarch Does Not Have an Adequate Administrative Remedy Pursuant to Section 105-241.19**

43. NCDOR argues that Monarch is a North Carolina taxpayer and could, if it chose, first address its constitutional claims by claiming the tax credits at issue on its own North Carolina tax return and then present an administrative claim pursuant to Section 105-241.19 if the credits were denied. Monarch claims that the Department's argument is illusory because Monarch effectively has no such remedy, first because it does not have and does not expect to have taxable North Carolina income against which the credits could be applied, and second because NCDOR could effectively deny Monarch the right to present its constitutional argument by simply not denying such small amount of tax credit Monarch might muster through a tortured effort to create income against which a credit might be claimed. That is, Monarch claims that the extensive damage it has suffered by the inability to pursue its business plan and to sell the tax credits it has already aggregated is wholly outside the reach of any possible proceeding under Section 105-241.19.[3]

44. The Court has carefully reviewed the extensive discussion in the supplemental briefs addressing the Department's suggestion of Monarch's failure to exhaust administrative remedies raised in the Department's response to the amici brief. Having done so, the Court concludes that while Monarch's *Corum* claim may

---

[3] As an aside, the Court notes that Monarch has argued that the Department's unconstitutional exercise of its powers will wholly escape judicial review if Monarch is confined to a Section 105-241.19 remedy. Any such argument is grossly exaggerated, as it is already evident that the Department's position at issue is being aggressively challenged through administrative proceedings brought by affected taxpayers suffering significant tax liability, one of which is presently before the Court.

ultimately fail on its merits, it is not barred by Monarch's failure to exhaust administrative remedies because Monarch as a practical matter does not have an administrative remedy which might address the issues its *Corum* claim raises.[4]

45.     Monarch admits that it is a North Carolina taxpayer.  As such, it would have remedies under Section 105-241.19 if the Department challenged Monarch's attempt to offset tax credits it owns against Monarch's income tax liability.  Monarch has adequately demonstrated that it does not have and has no realistic basis to create income against which to claim the tax credits at issue.

46.     The tax credits can only be claimed by a North Carolina taxpayer with taxable income.  *See* N.C.G.S. § 105-129.17(a).  A taxpayer claims the credit by applying it against the taxpayer's income, up to a 50% cap.  N.C.G.S. § 105-129.18.  There is no statutory provision allowing the tax credits to be utilized by taxpayers who do not have taxable income.  While Monarch currently holds a surplus of tax credits, it explains that it does not have, and is unlikely to have, income against which the tax credits could be applied:

> For Monarch to have a tax liability in North Carolina, the investments it makes in North Carolina would be required to, in aggregate, generate taxable income for North Carolina purposes.  Generally, this has not happened because most of the North Carolina investments are in solar renewable energy properties which consist of depreciable property and routinely generate losses for tax purposes precluding Monarch from claiming the credits.  Thus, at the Monarch entity level, there has been no net positive North Carolina-apportioned income against which a credit could have been claimed by Monarch, nor is net positive North

---

[4] In order to prevail on a *Corum* claim, the plaintiff must also prove that its constitutional rights have been violated.  This Order and Opinion does not address the merits of the claims and defenses as to whether Monarch's business was lawful or whether the Department's interpretation and enforcement was constitutional and consistent with the tax credit legislative enactment it is charged to enforce.

Carolina-apportioned income of Monarch expected in any future tax year.

(Pl.-Pet'r's Suppl. Br. at Ex. A, ¶ 2(b), ECF No. 38.)

47. This result flows from the underlying investment structure in which Monarch serves as a pass-through entity which allocates tax credits to other partnerships, which in turn pass the available credits to investors. Monarch is taxed as a partnership for federal and North Carolina tax purposes and files a partnership income tax return (Form D-403). When doing so, any tax liability flows to and would be reported on individual tax returns of the investor members of the partnership.

48. The Department raises a separate argument that this manner in which Monarch utilizes tax credits demonstrates that Monarch does not suffer adequate direct injury to confer standing. Having concluded that Monarch, as a practical matter, has no effective administrative remedy, the Court turns to this further argument.

C. **Having Adequately Demonstrated That It Has No Effective Administrative Remedy, Monarch Has Alleged an Adequate Direct Injury to Present Its *Corum* Claim**

49. "[W]here the Constitution points out no remedy and no statute affords an adequate remedy under a particular fact situation, the common law will furnish the appropriate action for adequate redress of such grievance." *Corum*, 330 N.C. at 782, 413 S.E.2d at 289 (quoting *Midgett*, 260 N.C. 241, 249–50, 132 S.E.2d 599, 608 (1963)). "Therefore, in the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution." *Id.*; *see also Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334,

339–41, 678 S.E.2d 351, 355–56 (2009) (holding that the plaintiff had standing "to proceed in the alternative with his direct colorable constitutional claim" where sovereign immunity precluded his common law negligence claim); *Sale v. State Highway & Public Works Comm'n,* 242 N.C. 612, 620–22, 89 S.E.2d 290, 297–98 (1955) (allowing a plaintiff to proceed with a common law negligence claim alleging violation of constitutional rights against the State Highway Commission where the plaintiff had no statutory claim).

50.     "[A] plaintiff must allege that no adequate remedy exists to provide relief for the injury" as an essential element of a *Corum* claim. *Copper v. Denlinger,* 363 N.C. 784, 788, 688 S.E.2d 426, 428 (2010). The relationship between an administrative remedy and a *Corum* claim has been stated as follows:

> When the General Assembly provides an effective administrative remedy by statute, that remedy is exclusive and the party must pursue and exhaust it before resorting to the courts. On the other hand, if the remedy established by the NCAPA is inadequate, exhaustion is not required. The burden of showing inadequacy is on the party claiming inadequacy, who must include such allegations in the complaint. The remedy is considered inadequate unless it is calculated to give relief more or less commensurate with the claim.

*Jackson for Jackson v. N.C. Dep't of Human Res. Div. of Mental Health, Developmental Disabilities & Substance Abuse Servs.*, 131 N.C. App. 179, 186, 505 S.E.2d 899, 903–04 (1998) (internal quotations and citations omitted).

51.     The Court has found that Monarch has adequately demonstrated that it does not have an adequate administrative remedy. However, the Department further contends that Monarch has not alleged or demonstrated that it has suffered adequate direct injury to afford it standing to challenge the Department's actions, arguing that

"unlike a taxpayer actually denied a [c]redit by the Secretary's interpretation . . . , [Monarch] is only a taxpayer with a general interest in the correctness of that interpretation." (Defs.-Resp't's Mem. L. Supp. Mot. Dismiss Petition 29, ("Br. Supp. Mot. Dismiss Petition"), ECF No. 15.) Elaborating, the Department argues that "any injury premised on unused [c]redits that [Monarch] owns and would like to sell in the future, [Monarch]'s asserted injury is too speculative to confer standing [because Monarch] . . . does not allege that it is unable to reconfigure its 'structures' to comply with North Carolina law[.]" (Br. Supp. Mot. Dismiss Petition 25.)

52. "Standing refers to whether a party has a sufficient stake in an otherwise justiciable controversy such that he or she may properly seek adjudication of the matter." *Am. Woodland Indus., Inc. v. Tolson*, 155 N.C. App. 624, 626, 574 S.E.2d 55, 57 (2002) (requiring that the plaintiff must "have been injured or threatened by injury or have a statutory right to institute an action"); *Bruggeman v. Meditrust Co., LLC*, 165 N.C. App. 790, 795, 600 S.E.2d 507, 511 (2004) (internal quotation marks omitted). "As a general matter, the North Carolina Constitution confers standing on those who suffer harm: 'All courts shall be open; [and] every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law[.]' " *Mangum v. Raleigh Bd. of Adjustment*, 362 N.C. 640, 642, 669 S.E.2d 279, 281–82 (2008) (quoting N.C. Const. art. I, § 18). "[T]he nuts and bolts of North Carolina standing doctrine are not coincident with federal standing doctrine." *Goldston v. State*, 361 N.C. 26, 35, 637 S.E.2d 876, 882 (2006); *compare Piedmont Canteen Serv., Inc. v. Johnson*, 256 N.C. 155, 166, 123 S.E.2d 582, 589

(1962) ("Only those persons may call into question the validity of a statue who have been *injuriously affected* thereby in their persons, property or constitutional rights." (emphasis added)), *with Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (noting that one of the three elements of federal standing is an "injury in fact" that is "concrete and particularized").

53. These rules apply in the context of constitutional attacks on legislation or other state action. "[T]his Court will not determine the constitutionality of a legislative provision in a proceeding in which there is no 'actual antagonistic interest in the parties.' " *Nicholson v. State Educ. Assistance Auth.*, 275 N.C. 439, 447–48, 168 S.E.2d 401, 406 (1969) (quoting *Bizzell v. Insurance Co.*, 248 N.C. 294, 103 S.E.2d 348). "Only one who is in immediate danger of sustaining a direct injury from legislative action may assail the validity of such action. It is not sufficient that he has merely a general interest common to all members of the public." *Id.* (citing cases); *see also Piedmont Canteen Serv., Inc.*, 256 N.C. at 166, 123 S.E.2d at 589.

54. The Court concludes that Monarch alleges significantly more than a generalized public interest in North Carolina's tax policy when it claims that the NCDOR's interpretation "has shuttered Monarch's North Carolina tax credit business and has deprived Monarch of investment-related revenue by invalidating state tax credits authorized by the General Assembly." (Pl.-Pet'r's Resp. Defs.-Resp't's Resp. Mot. Leave File Amicus Br. Out of Time & Amicus Br. 3, ECF No. 29.) It bolsters its standing by referencing earlier reliance on private letter rulings provided to its affiliates regarding the appropriate structuring for Monarch's business

such that its customers could claim tax credits. (*See* Petition, Ex. 1.) NCDOR vigorously challenges Monarch's characterizations and whether Monarch appropriately characterizes the private letter rulings and seeks to apply them beyond their context. The Court concludes that those arguments are more directed to the underlying merits of the claims than they are to Monarch's standing to bring them.

55.  In sum, the Court concludes that Monarch's asserted interest in the Secretary's interpretation of section 105-269.15(c) of the North Carolina General Statutes is greater than "merely a general interest common to *all* members of the public." *Charles Stores*, 263 N.C. at 717, 140 S.E.2d at 375 (emphasis added). As such, the Court concludes that Monarch has standing to present its *Corum* claims and that they should not be dismissed pursuant to Rule 12(b)(2).

## VI.  CONCLUSION

56.  For the foregoing reasons, the Court DENIES Defendants' Motion to Dismiss to the extent it challenges the Court's subject matter and personal jurisdiction.

57.  The Court's present determination is limited to the issue of whether Plaintiff's complaint survives an initial jurisdictional challenge. The Court has neither ruled upon nor predicted a ruling upon the ultimate merits of Plaintiff's contention that its constitutional rights have been infringed, and if so, to what relief it is entitled.

This the 25th day of January, 2021.


 /s/ James L. Gale

James L. Gale
Senior Business Court Judge